ATCHISON, T. & S. F. RY. CO. et al. v. INTERSTATE COMMERCE
COMMISSION et al.

No. 2.

(Commerce Court.   July 31, 1911.)

For majority opinion, see 188 Fed. 229, 241.

MACK, Judge (dissenting).   In my opinion the finding of the Commission, that the industry track service in the city of Los Angeles is substantially the same as the team track and depot service, is binding upon this court.   I agree that this court should not be concluded by a finding of the Commission, based upon admitted facts which in no wise tend to sustain the conclusion reached; but in my judgment the facts in this case, as related by the Commission in its report, fully justify its conclusions.   The Commission finds as follows:

"Each of the carriers here involved has designated certain territory as within its switching or yard limits in the city of Los Angeles, extending for six or seven miles in a general easterly and westerly direction, and including numerous tracks, main lines, branch lines, industry spurs, classification tracks, team tracks, repair tracks, and others, and also their stations, freight sheds, derricks, roundhouses, and other structures.   Freight moving in car loads is delivered at team tracks, at freight sheds, or at industry spurs.   *   *   *

"These industry spurs are not private, in that the carrier may use them for purposes of its own—as for storage of cars, as leads to other industries, and sometimes for public delivery.   They are often laid upon public streets and over private property, are operated exclusively by the railroad with its own engines, and furnish means of interindustry conveyance by rail, for which the carrier properly imposes a switching charge.   *   *   *

"We are fully convinced that the complainant's view of the nature of these tracks is correct, and that they are portions of the terminal facilities of the carrier with whose lines they connect, and, together with the team tracks and other yards, form the terminal facilities of these carriers.   *   *   *

"Again, it is not to be overlooked that the delivery given on an industry spur is not supplemental to any other delivery.   Cars destined to industry spurs are not placed first at a spur, depot, or on the team tracks, or at the sheds, and later switched to oblige the consignee.   A train of freight cars goes to the breaking-up yards, which lie at the entrance to the city, and there it is divided up with respect to the character of the freight in the various cars and their destination.   No one has access to the cars at this point.   This yard is purely a railroad facility.   After the cars are segregated, they are taken to the tracks to which they are ordered—some to the various team tracks distributed along the main line, some to different industries, some perhaps to the railroad shops, or to freight sheds, or to the stockyards.   *   *   *   After a most exhaustive inquiry, we cannot find, taking this service as a whole, in the same way that it is treated by the carriers, that the service is more expensive to the carrier than if all cars were given team track delivery."

If, then, these industry tracks are, as the Commission in my judgment correctly finds them to be, terminal facilities of the railroad, and if, as the Commission further finds, the service for which the charge in question is made is substantially the same service as that which is performed by the carrier in delivering freight on its team tracks, the

Commission was justified in prohibiting, as an unreasonable practice, the additional so-called switching charge made for the delivery at the industry tracks.

While under the American practice, as distinguished from the English practice, the transportation rate has always included the charge for the use of the ordinary terminal facilities—that is, the use of depots or tracks for the purpose of delivery—it may well be that the Commission has the right, in regulating the practices of the carriers, to require a separation of the transportation rate into its elements. It may well be that the dangers of undue preferences and unjust discriminations in favor of large industries, which can afford to have industry tracks, may not only justify, but in the future require, the Commission so to act, and that, too, despite the common-law principle enunciated in Covington Stockyards v. Keith, 139 U. S. 128, 11 Sup. Ct. 469, 35 L. Ed. 73, and conceded in complainant's brief in the following language:

"Of course, it may rightfully be assumed that the charge established by the carrier for carrying goods to and from the given cities *does necessarily* embrace the use of instrumentalities which the carrier must furnish to accomplish the carriage, such as engines, cars, the railroad, and the depots and delivering yards, where goods of the public in general may be received and delivered. In other words, a double charge may not be imposed for the same thing."

If such action should be taken, shippers located on industry tracks, whose cars go directly from the breaking-up yards to these tracks, could not be compelled to pay for the use of the team track terminal facilities; but, on the other hand, they could be compelled to pay for the use of terminal facilities on the industry tracks. We need not now determine whether, in that event, a higher rate for industry than for team track delivery could be permitted or compelled, if the cost of each delivery to the carrier were the same, in order to prevent the large shipper, located on an industry track, from gaining such advantage as would naturally accrue to him from his location.

The Commission, however, has not yet attempted to exercise this possible power. It has acted on the basis of the long-established American practice, which it was justified in assuming would be continued. Under that practice the shippers on industry tracks pay a delivery charge in the regular transportation rate. Nothing in the order sought to be enjoined compels the railroads to continue to maintain the industry tracks or to make delivery thereon. If, however, they voluntarily make delivery thereon, instead of on their other tracks, they are prohibited from exacting additional compensation for a service found to be substantially the same as that for which payment has already been made.

Moreover, nothing in the order prevents the railroads from making different transportation charges to the various depots or tracks in the city. A difference of seven miles in the length of the haul might, under some circumstances, justify a difference in the transportation rate. That rate, however, is not in question on this record. Moreover, this extreme difference in the length of some of the hauls does

not, in my judgment, justify the court in holding as untenable the finding of the Commission, based on a careful consideration of all the physical and economic conditions, that industry and team track delivery in these cities are practically identical.

The conclusion of the Commission is, in substance, that inasmuch as, under the American practice, no separate charge is made for team track delivery, but only a single charge for transportation, including delivery, a separate charge for the similar, no more costly, and voluntarily substituted spur track delivery is an unreasonable practice. An order prohibiting the charge is, in my judgment, within the powers granted to it under section 15 of the act to regulate commerce.