## Louisville & Nashville Railroad Co. v. Thompson.

(Decided October 12, 1911.)

## Appeal from Marion Circuit Court.

1. Railroads—Maintaining Stock Pens.—It is incumbent upon the railroad company to maintain reasonably sufficient stock pens; that is, such as a reasonably prudent person would believe sufficient to confine stock under usual and ordinary conditions there.

2. Injury to Stock Escaping.—There is some evidence that horses are injured in escaping from a stock pen when they were sound before they escaped and appeared injured afterwards, the wounds being such as might be inflicted by the spikes at the stock pen, and the spikes showing that the horses had been snagged upon them.

3. Same—Measure of Damages.—The measure of damages is the difference in value at the place of delivery of the horses in the snagged condition, and what it would have been if they had not been snagged.

W. C. McCHORD, W. W. SPALDING, CHAS. H. MOORMAN and BENJAMIN D. WARFIELD for appellant.

JOHN McCHORD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Tom Thompson on January 8th, 1910, brought to Lorretto and placed in the railway cattle pen there fifty-six mules and three horses to be shipped to Atlanta, Georgia. He wished to ship the stock that night, and brought them and placed them in the cattle pen about five p. m. at the direction of the railroad agent. The stock remained in the cattle pen quietly until about eight p. m., when a locomotive was moved in on a side track by the cattle pen and this caused the stock to run back against the back fence of the cattle pen. The post next to the corner gave way; the fence plank had not been nailed to the corner post, but an upright had been spiked on to the corner post, two by eight inches wide, or four

by four inches wide, according to some other evidence, and the plank had been nailed to this upright. The upright tore loose from the post, and the fence planks were pushed back enough to allow some of the stock to run out. The upright was still attached to the plank and the spikes which had been pulled out of the post when the upright was torn from it, stuck out about three inches. The stock were gotten back into the cattle pen and shipped. This action was brought to recover damages against the railroad company on the ground that it maintained an insufficient cattle pen; that the three horses in running out of it were snagged by the spikes sticking out of the upright above described, and that the injuries they thus received depreciated them in value $300. The railroad company by its answer controverted the allegations of the petition and the case having been tried before a jury, there was a verdict and judgment for the plaintiff. The railroad company appeals.

It is insisted that there was no evidence that the horses were injured in escaping from the pen. The evidence is that when they reached Atlanta, they had wounds on them which were such as the spikes above referred to were calculated to inflict. The wounds were not fresh but were apparently of the age they would have appeared, if inflicted in the cattle pen. The horses were sound when placed in the pen; they were wounded when they were taken out of the car. They were carefully loaded, and there was no showing that they had received the wounds on the journey. In addition to this it was shown that the spikes the next morning after the horses were shipped, were seen to have horse hair upon them, and one horse was noticed to be bleeding when he was put in the car. Our rule is that if there is any evidence, the question is for the jury. We cannot say that there was no evidence that the horses were injured as charged.

It is also insisted that there was no evidence that the cattle pen was defective. The proof on this subject by one witness for the plaintiff was that the post which gave way was rotten and broke off, and another witness testifies that the spikes which held the upright to the corner post, would not have given way if that post had been sound. In addition to this there are two respects in which the jury were warranted in concluding the cattle pen fence was defective under all the evidence. In the first place

the fence was only 46 inches high. A lawful fence made of plank under section 1780, Kentucky Statutes, must be 4 1-2 feet or 54 inches high. A low fence is much more liable to be broken or pushed over than a higher fence which the stock would not have their heads over. In the second place a railroad cattle pen is made to hold stock, when trains are moving about, for they are necessarily to be loaded on the cars from the cattle pens. The plank of the fence should, therefore, be nailed on the inside of the post; for it must be expected that the stock will move against the fence to get away from the engines, and the plank of the fence should not be put on so that they can be pushed off by pressure from the inside. The plank of this fence was not nailed on the inside of the corner post, and we think it reasonable from all the evidence that if it had been so nailed the injury would not have occurred. We, therefore, conclude that there was sufficient evidence to submit the case to the jury.

The defendant introduced sundry witnesses and proposed to prove by them that the stock were transported to Atlanta with reasonable dispatch in reasonable time without any delay or rough handling, and with proper care and attention throughout the entire journey; that they were properly fed and watered at Knoxville, Tennessee, in stock pens which were in good condition. The court declined to allow the evidence and properly so; for it threw no light on the controversy. The action was based on the idea that the horses were injured at Loretto, and proof that they were properly taken care of after they left Loretto did not serve to rebut in any way the case that the plaintiff had made out.

The court at the conclusion of all the evidence gave the jury instruction A. also instruction C:

"A. It was the duty of defendant company to maintain about its stock pens at Loretto, Kentucky, such fence as in the judgment of ordinarily careful and prudent persons would safely and securely hold and confine such stock as might be placed there for loading upon its cars for shipment, and if you shall believe from the evidence that defendant company negligently failed to have and maintain such fence about said pens and that by reason of such failure, plaintiff's three horses escaped therefrom and were injured, you should find for plaintiff and award him in damages the difference between the fair market value of said horses delivered at Atlanta,

Georgia, in the condition they were in when first placed in said pens at Loretto, and their condition after they were injured by escaping therefrom, not exceeding $300."

"C. The court instructs the jury that if they believe from the evidence that the stock pens in which plaintiff's stock were confined at the time complained of, was in a reasonably safe condition, that is, such as a reasonably prudent person would believe sufficient to confine stock under usual and ordinary conditions there, they should find for defendant."

Instruction C properly submitted to the jury the law of the case. It is incumbent on the carrier to keep and maintained its stock pens in a reasonably safe condition for the purposes for which they are intended. (Covington Stock Yards Co. v. Keith, 139 U. S., 128; Chapin v. Chicago, &c., R. R. Co , 77 Iowa, 582; Feinberg v. Delaware, &c., R. R. Co., 52 N. J. L., 451; East Tenn. Ect. R. R. Co. v. Herrman, 92 Ga., 384; Texas, &c., R. R. Co. v. Bingham, 90 Tex., 223.) The defendant was required to use ordinary care in the construction of its cattle pens, and it was required to construct the cattle pens with ordinary care considering the use that would reasonably be made of them, and the strains which would reasonably be put upon them. If there was any defect in the verbiage of instruction A in defining what would be sufficient care, it was certainly cured by instruction C. Under instruction A, the jury could not find for the plaintiff unless there was negligence in maintaining the cattle pens, and by reason of this the three horses escaped and were injured. The difference between the market value of the horses in their damaged condition and what their value would have been if they had not been injured is the proper criterion of recovery. We cannot see under all the evidence how the jury could have misunderstood, or been misled by, the instructions.

Judgment affirmed.