YAZOO &. M. V. R. R. CO. *v.* G. Y. CRAWFORD.

[65 South. 462.]

1. CARRIERS. *Carriage of goods. Duties. Monopolies. Contracts in restraint of trade. Validity. Loading privileges. Loading facilities. Action. Recovery.*
   There is no legal obligation resting upon railroads as common carriers to furnish their cars, engines, and crews to individuals carrying on a log loading business, or to receive logs to be loaded on its cars along the right of way between stations.

2. MONOPOLIES. *Contracts in restraint of trade. Validity.*
   Since a railroad company is not bound to furnish facilities for the loading of logs between stations, it may, where it had permitted the loading of logs at such points, undertake the business itself, to the exclusion of all others and having this right it could employ another to do that which it could itself lawfully do, and such would not constitute an illegal monopoly.

3. SAME.
   Our anti-trust statute was only intended to embrace within its provisions those contracts in restraint of trade, which were invalid as against public policy before the enactment of the statute.

4. RAILROADS. *Licenses for loading privileges.*
   Because a railroad company had for a long time allowed private individuals the privilege of loading at points between its stations and plaintiff had built up a profitable business under that arrangement, does not give plaintiff any right to insist that the

privilege be continued and he cannot object that the railroad company thereafter gave another the exclusive license to load logs between stations, since a repetition of favors for accommodation cannot constitute a foundation for a valid claim to their enjoyment as a right.

5. CARRIERS. *Carriage of goods. Loading facilities. Principal and agent.*

Where a common carrier of logs gave another the exclusive privilege to load logs at all points on its line, such third person became thereby the carrier's agent, and the carrier is liable to a shipper of logs for the loader's failure to promptly load his logs.

6. CARRIAGE OF GOODS. *Actions. Recovery.*

A railroad cannot hold itself out as a common carrier of logs, and refuse the shipper the right to load his own logs and escape the responsibility of a wrongful performance of duty by an agency employed by it to discharge this function. It must either provide for loading logs itself, or it must allow the shipper to load them, and furnish the facilities for that purpose and this objection is not affected in any way by the fact that the railroad company has published its tariff according to law, or that it was necessary for the plaintiff as a condition to maintaining his action to go before either the Mississippi Railroad Commission or the Interstate Commerce Commission to correct his grievance.

APPEAL from the circuit court of Bolivar county.

HON. SAM C. COOK, Judge.

Suit by G. Y. Crawford against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Chas. N. Burch, H. D. Minor, Frank A. Montgomery* and *Mayes & Mayes,* for appellent.

*T. S. Owen, Belford & Allen* and *Sillers & Sillers,* for appellee.

HARRIS, Special Judge, delivered the opinion of the court.

This is an appeal from a judgment rendered in the circuit court of Bolivar county against the railroad com-

pany in favor of G. Y. Crawford, from which the railroad company appeals.

The facts which led to the institution of the suit are substantially as follows: Owing to the peculiar topography of the country, and the difficulties attendant upon carrying logs for shipment to the established stations of the railroad company, the railroad company for some years undertook to receive logs for shipment at points along its right of way between stations for the mutual convenience of itself and shippers of logs, requiring the shippers to load their logs, but extended to persons owning log loading machinery the privilege of loading logs at any point along the road where the same might be accumulated, the company furnishing flat cars, engines, and crews for moving the logs when loaded, and also for moving the log loading machinery from place to place as it became necessary for the loading of logs, and allowed the owners of log loading machinery, not only to load logs for their own mills where they were owners of mills, but also to load logs for other parties owning mills, who did not own log loading machinery, and to charge the parties served for the loading. The log loader is a device which is put upon a flat car, and, by means of a derrick and other appliances, the logs are lifted from the ground and deposited upon the flat cars. This privilege and arrangement was confined entirely to one portion of the railroad company's line, and was altogether exceptional and due to the peculiar conditions existing, and was intended by the railroad company to foster the log-shipping industry, and to facilitate shippers in getting their logs to market or to their mills.

The plaintiff was engaged in the manufacture of staves, and had two mills, one at Boyle and one at Dean on the line of the defendant's road, and he was also the owner of a log loader, and had been for some years engaged in loading his own logs for his own mills, and also in the independent business of a log loader, loading logs

for other shippers who did not own log loaders. After trying this arrangement for several years, the railroad company concluded that it was altogether unsatisfactory, that it led to confusion and interfered more or less with the general operation and movement of trains on its road in its general business, and also in the handling of logs, as there were several other parties besides the plaintiff engaged in the business of log loading, using the trains, engines, crews, and tracks of the railroad company. In order to systematize the business and render it more satisfactory to the shippers of logs and the owners of mills, and to prevent confusion and delays, arising from allowing a number of independent owners of log loading machinery on the road at the same time, and some at the same place, the railroad company had a conference with the mill owners who were served from this district, both in Memphis and in Mississippi, and also with the shippers of logs, and it was concluded that it was best to abolish the practice of extending this privilege indiscriminately to a number of owners of log loaders, and to place the loading under one responsible head, and as a result of this conference what is known as the Valley Log Loading Company was organized. This log loading company was not a shipper of logs nor interested in mills, but was simply organized as a log loading agency, and the railroad company's contracts with it gave it the exclusive right to load all logs along the line of its road. It seems that this Valley Log Loading Company divided the territory into certain districts, and employed log loaders to load logs in particular districts, so as to prevent conflicts and confusion. The plaintiff made a contract with the Valley Log Loading Company under which he operated for some seven or eight months, hauling logs to his own mills, and also loading logs for other persons, at a profit, paying the Valley Log Loading Company twenty-five cents per one thousand for all logs hauled for other persons, but paying nothing for logs

loaded for his own mills.  He terminated this contract
and brought suit against the railroad company.  There
were two declarations filed, an original and an amended
declaration.    Each   declaration   contains   two   counts.
These declarations are very long; but the ground of
complaint in each is practically the same, the basis of
the action being the claim of the plaintiff that the con-
tract made by the railroad company with the Valley
Log Loading Company was illegal, as being unjustly dis-
criminatory against him, in that it denied him the right
to load logs, and extended it to the Valley Log Loading
Company, and that it was an illegal restraint of trade,
and created an illegal monopoly.

In the first count of each declaration, the plaintiff
claims that he had established an independent log load-
ing business profitable to him, and that by reason of the
alleged illegal contract his business had been destroyed;
that he had incurred considerable expense; that he lost
the benefit of certain contracts for loading logs which
were then existing, and also the opportunity of making
other contracts.  In other words, that he had established
a profitable loading business which had been destroyed
by this alleged illegal contract; the claim being that he
had established this business, relying upon an alleged
established custom of the railroad company which had
the force of law, and that the railroad company was lia-
ble to him in damages for destroying his business.

In the second count of each declaration, the claim set
up is that the plaintiff was damaged in his relation as
shipper of logs and a manufacturer of staves, claiming
that the railroad company did not furnish facilities at its
stations or elsewhere reasonably sufficient to handle the
logs intended for shipment; that the Valley Log Loading
Company was not only inadequately equipped but would
not load logs for the plaintiff when demanded; and that,
by reason of that, the plaintiff's business as a stave man-
ufacturer was so greatly crippled that he had to close his

two mills at Boyle and Dean and move them to other localities where timber was more convenient.

We think this statement will be sufficient for a practical understanding of the decision of the court.

It will be seen that the plaintiff is claiming damages of the railroad company in two aspects, one for destroying his business as an independent log loader, and the other in destroying his business and damaging him as a shipper and a mill owner; and one of the underlying questions is as to the validity of the contract made with the railroad company and the Valley Log Loading Company.

The railroad company set up as a special defense in this case the facts which we have set forth, claiming that it derived no profit whatever under this contract which it had made with the Valley Log Loading Company; that the contract was not intended to favor the Valley Log Loading Company or to discriminate unlawfully against the plaintiff or any one else, but was rendered necessary by the exigencies of the case—what the railroad company considered as being in the interest of the public, that is to say, the mill owners, and log owners, and log shippers, and the general public as passengers and shippers of freight. It was claimed that it was under no legal obligation to furnish the plaintiff or any one else with a train of cars for loading logs anywhere, and particularly at places between stations, and that in doing this it was acting purely in a private capacity, and as a private carrier, and not as a common carrier, and that it had a right to terminate this arrangement or adjust it, or to make any other arrangement that it considered best for the interest of all parties concerned, it not being the purpose of the railroad company under this contract to give any undue preference to any competitor of the plaintiff; that the Valley Log Loading Company was not in existence, and not a competitor of the plaintiff, but was organized solely for the purpose of loading logs; that the

arrangement was not in any sense in restraint of trade, but intended to foster and promote the interest of the shippers; that it was not an illegal monopoly, but was the doing of an act which the railroad company had a legal right to do.

It is well enough to say here that it is admitted, both in the argument and in the briefs, that the railroad company was under no legal obligation to make the arrangement which had theretofore existed, and that it had a right to abolish it at any time, and that the plaintiff would have had no right of action; but it is claimed that, as the railroad company did not entirely abolish its arrangement, but had made a contract with the Valley Log Loading Company to carry on a log loading business, its contract, being exclusive, was illegal as extending a right to the Valley Log Loading Company which it denied to the plaintiff and all other parties doing a loading business.

We are of opinion that the contract made with the Valley Log Loading Company under the circumstances was not an illegal contract. The arrangement which the railroad company had made with reference to the loading of logs and furnishing to parties its cars, engines, and crews was not in any sense a function or duty required of the company in its capacity as a common carrier. There was no legal obligation resting upon the railroad company to furnish its cars, engines, and crews to individuals carrying on a log loading business, or to receive logs to be loaded on its cars along the right of way between stations. The railroad company could itself have undertaken this to the exclusion of everybody else. This is not controverted. It would then monopolize the business in a sense, but not legally.

In the case of *Houck* v. *Wright*, 77 Miss. 483, 27 So. 617, this court says:

"The legislature, by the chapter on trusts and combines, did not intend to debar a person from conducting his own private business according to his own judgment."

It was not the purpose to limit either the term used in the Constitution or in the statute by any narrow definition, but leave it to the courts to look beneath the surface and, from the methods employed in the conduct of his business, to determine whether the association or combine in question, no matter what its particular form should chance to be, or what might be its constituent elements, is taking advantage of the public in an unlawful way. This case and this extract from it were cited with approval of this court in the case of the *Telephone & Telegraph Co.* v. *State,* 100 Miss. 116, 54 So. 670, 39 L. R. A. (N. S.) 277.

This court further held in the case of *Telephone Company* v. *State, supra,* that our anti-trust statute was only intended to embrace within its provisions those contracts in restraint of trade, those monopolies and attempts to monopolize, which were invalid as against public policy before the enactment of the statute; that a contract in reasonable restraint of trade was valid before the enactment of the statute, where its design and purpose was not to create a monopoly, and that such contract is valid now, where it is only such as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public. See, also, *Railroad Co.* v. *Searles,* 85 Miss. 520, 37 So. 939, 68 L. R. A. 715; *Sivley* v. *Cramer,* 61 So. 653.

In the case of *Telephone Company* v. *State, supra,* it was contended on the part of the state that a contract made between the Cumberland Telephone & Telegraph Company and the Oxford Telephone Company, a local company, containing the provision that the local company would not extend its line so as to conflict with the business or interest of the Cumberland Telephone & Telegraph Company, and would not make any connection with any other telephone line, and would not extend its lines outside of Lafayette county, and give its long distance

business *exclusively* to the Cumberland Company, was not an illegal contract, and that it was a contract made in good faith on the part of the companies for the purpose of protection to their interests, and in the interest of the public, and that this contract improved the efficiency of both systems and made both more valuable to the public, as well as to the owners. In the case at bar the reasons for upholding the contract as valid are, if anything, stronger than in the telephone case, for the reason that the railroad company has the right, as was admitted, and as must be admitted, at any time to abolish the whole arrangement and assume itself the duty of loading logs to the exclusion of every one else, if it saw fit to do so; and if it has the right to do this, it certainly had the right to make the contract with another corporation or individual to perform that service for it. See *Covington Stock Yard Company* v. *Keith,* 139 U. S. 128, 11 Sup. Ct. 469, 35 L. Ed. 73. In that case the railroad company had a contract with the stockyard company to furnish facilities for the loading and unloading of live stock. The court said:

"It did not concern them (the shipper) whether the railroad company itself maintained stockyards or employed another company or corporation to supply the facilities for receiving and delivering the live stock it was under obligation to furnish."

In other words, it is not unlawful for the railroad company to employ another to do that which it could itself lawfully do. That is what was done in the case at bar. It was for the railroad company to determine whether the existing arrangement was inconvenient, confusing, or dangerous—that was a matter of its own concern. It could have abolished the arrangement, without assigning any reason for it, if it saw fit to do so, as it was under no legal obligation to continue it.

It is claimed, however, by the plaintiff that he had built up a business upon the faith of the arrangement existing,

and that the taking from him the right to do a log load-
ing business and not furnishing him with facilities for
that purpose had destroyed his business. We think the
plaintiff cannot claim that he had established a business
of a permanent nature, based upon the doing by the rail-
road company of an act which it was under no legal obli-
gation to perform, and whatever he did in this regard
must have been done subject to the right of the railroad
company to abolish the arrangement at any time. We
do not see that there is anything in the record which
would support the claim of the plaintiff that there was
an established custom which had ripened into the force
of law.

In the case of *V. & M. Railroad Company* v. *Dixon,* 61
Miss. 119, the court held that the fact that the railroad
company had for thirty years maintained and repaired a
stock gap where its road entered the plaintiff's field did
not impose upon the railroad company any legal obliga-
tion to continue to repair and maintain the stock gap,
and that it was not liable for having neglected repair-
ing it, although by reason of such neglect, cattle had en-
tered plaintiff's field and had destroyed his crop. The
court, through Justice CAMPBELL, said:

"A repetition of favors for accommodation cannot con-
stitute a foundation for a valid claim to their enjoyment
as a right. The course of dealing between the parties
about the cattle gaps did not affect the question of right
or liability in respect to them. . . . The law imputes
to him a knowledge of the nonliability of the company
for the maintenance of the cattle gaps, and it is his mis-
fortune to have relied on the appellant to render him a
service for which he had no legal claim on it. . . .
Unless the appellant was legally bound to repair the (cat-
tle) gap, it was not liable for not doing it. It certainly
was not originally bound to construct these appliances
for the benefit of the appellee."

We cannot see why the principle announced in this
case does not apply here, so we hold that the contract

in this case was not illegal, and that the railroad company had a legal right to abolish the course of dealing, and therefore the plaintiff could not recover for the interruption of his business as a loader of logs, and the court below erred in allowing him to recover damages under the first count of the declaration.

It will be seen that the relation which the plaintiff bore to the railroad company as a loader of logs for a profit and that of a mill owner and shipper of logs are quite distinct. While we hold that the contract is valid, yet as a common carrier of logs, which the railroad company certainly was, it owed to the plaintiff, as a shipper, certain duties which it was legally bound to perform. The railroad company could have abolished the practice of receiving logs for shipment between stations. We will not go so far as to say that it might have, owing to the exceptional character of the commodity, required the owners and shippers to load their logs at stations; but the railroad company would have been bound by law to have furnished stations, at least, facilities for loading logs if it undertook to receive logs for shipment. In this case the complaint is that the railroad company did not furnish any facilities directly for the loading of logs; but it did contract with an agency, the Valley Log Loading Company, to load the logs between stations and elsewhere, and we hold that the Valley Log Loading Company was merely an agency of the railroad company for the performance of whose duties the railroad company was responsible. The railroad company could not say to the shipper:

"You shall not load logs for yourself, and we will not furnish any facilities for loading logs although we hold ourselves out as carriers of logs."

It must either load the logs itself or furnish proper facilities to the owners of logs for shipment. The plaintiff had a right to demand this of the railroad company. It was conceded on the argument that the rail-

road company would be responsible for any dereliction of duty on the part of the Valley Log Loading Company, and aside from this admission, we think the law would impose this liability upon the railroad company and treat the log loading company as an agent of the railroad company in this respect, and treat the railroad company as having assumed the duty of loading logs.

Under the second count of the declaration, the plaintiff claims that no facilities were offered to him at stations, and that the Valley Log Loading Company did not load his logs, that is to say, the logs intended for his business as a shipper and as a millman, when he called upon it so to do, at least they were negligent in this regard, and that he was unable to carry on his business at Dean and Boyle profitably, and to fill contracts for staves which he had made, or to make other contracts.

In the case of *Covington Stock Yard Co.* v. *Keith, supra,* the supreme court of the United States says that, while it was held that the railroad company had a right to make an exclusive contract with the Covington Stock Yard Company, the contract providing that it would make the yards of the stockyard company its depot for delivering all live stock during the term of the contract, and not to build or allow to be built on its right of way any other depot or yards for the reception of live stock, yet the stockyards company was bound to accord to Keith all privileges that he was entitled to from its principal as a common carrier, and, as the common carrier did not offer to establish stockyards of its own, the court did not err in requiring the railroad company to receive and deliver live stock at the stockyard of the plaintiff. See, also, Hutchinson on Carriers (3d Ed.), sec. 509 *et seq.*

In the case at bar the railroad company adopted an agency for the loading of logs, it is a common carrier of logs, it denies to the plaintiff the right to load his own

logs, and, while it has a legal right to make the contract in question, it must see that the rights of the shipper, the plaintiff, are protected as fully as if the railroad company itself was undertaking to load logs for shipment directly. The plaintiff was entitled to recover any damage which he may have sustained as the proximate result of the failure of the log loading company to discharge this duty to him; and, for this reason, the court did not err in refusing to give a peremptory instruction asked by the railroad company under the state of the testimony in the record. The judgment of the court below must be reversed, because the court erred in allowing the plaintiff to recover damages on account of the loss of the log loading business; but the plaintiff will be entitled to recover such damages as he may be able to show by proper proof to have sustained in his capacity as shipper and millman. The railroad company must be treated in this case as having undertaken itself to load logs for shippers through an agency employed by it, that is, the Valley Log Loading Company. The plaintiff's right to recover damages, of course, will be determined by the ordinary rules of law applicable to such cases.

The railroad company cannot hold itself out as a common carrier of logs, and refuse the shipper the right to load his own logs and escape the responsibility of a wrongful performance of duty by an agency employed by it to discharge this function. It must either provide for loading logs itself, or it must allow the shipper to load them, and furnish the facilities for that purpose. We do not consider that this phase of the case is affected in any way whatever by the fact that the railroad company has published its tariffs according to law, or that it was necessary for the plaintiff as a condition to maintaining this action to go before either the Mississippi Railroad Commission or the Interstate Commerce Commission to correct his grievance. The duties which are

imposed upon the carrier here are the duties which the law imposes independently of the Interstate Commerce Commission and the Mississippi Railroad Commission, but arises from the nature of the functions performed by the railroad company and the duty which the law imposes upon it in this regard.

*Reversed and remanded.*