MILLER, DIST. ATTY., FOR USE OF STATE, *v.* FIDELITY UNION FIRE INS. CO. *et al.*

[88 South. 711, No. 21973.]

1. *Equity.* On hearing of chancery cause on bill and answer before expiration of time for taking testimony, denials, averments, and admissions in answer must be taken as true.

Where a cause pending in the chancery court is set down for hearing by the complainaat upon bill and answer before the time has elapsed for the taking of testimony, the court must consider the denials, the averments, and the admissions made in the answer as true. Section 603, Code 1906 (section 263, Hemingway's Code).

2. EQUITY. *Monopolies. In penal suit for violation of Anti-Trust Law, unlawful agreement must be averred.*

In suits for the violation of chapter 119, Laws 1908 (Hemingway's Code, section 3281, pars. [h] and [i], and section 3282), one of the necessary averments of the bill is the unlawful agreement mentioned in these sections. When the answer denies this agreement and the cause is set down for hearing upon bill and answer, as above stated, the denial of the answer is to be taken as true, and there is no violation of either of these sections.

3. MONOPOLIS. *Unlawful agreement must be averred in prosecution of insurance companies for violationg Anti-Trust Law.*

In a suit for a violation of these sections of the Anti-Trust Law, one of the material averments in a bill, which must be either admitted by the answer or proved, is the fact of an unlawful agreement, either directly among the insurance companies themselves, or an agreement to absolutely delegate the power to fix the insurance rates to a rating bureau and to be bound by the rate established by the bureau.

4. MONOPOLIS. *One insurance company cannot violate Anti-Trust Law by adopting insurance rate fixed by other companies.*

One insurance company, in the absence of an agreement, could not violate this law by independently adopting as its rate of insurance the advisory rate of this bureau.

5. MONOPOLIES. *Denial of agreement to fix rates held sufficient in prosecution for violating Anti-Trust Law.*

The fact that several insurance companies have adopted the rate promulgated by the Mississippi, Inspection & Advisory Rating Bureau, and their answer specifically denies any agreement of any kind among them to so adopt, and further denies any agreement among them to delegate the rate-fixing power to this bureau, this is a denial of one of the necessary elements to be proven to constitute a violation of these laws, namely, a denial of any agreement as to the fixing of the rate or the delegation of this power to the bureau.

APPEAL from chancery court of Pike county.

HON. R. W. CUTRER, Chancellor.

Suit by Hugh B. Miller, District Attorney, for the Use of the State, against the Fidelity Union Fire Insurance Company and others. Bill dismissed, and plaintiff appeals. Affirmed.

*Miller & Hendricks,* for appellant.

The section of the statute defining Trusts and Combines: "A trust and combine is a combination, contract, understanding or agreement, expressed or implied." Thus by the terms of the statute itself the understanding or agreement may be implied to fix and maintain "the price or

premium to be paid for insuring property against loss or damages by fire, lightning or tornado."

Independent of the statute conspiracies may, by the common law, and usually are implied and are not usually susceptible of proof by direct or positive evidence, but may be always implied from circumstances.

There can be no doubt that the combine and agreement involved here which is a criminal conspiracy may be implied from sufficient circumstantial evidence to establish it.

I state in advance that I have no doubt about the authority and legality of the Advisory and Rating Bureau to make the necessary surveys and classifications and advisory rates, still this question is not involved in the solution of the questions here before the court. The question still remains was it lawful to agree uniformly to use this information solely as to the basis of contracts of insurance and to agree to be governed by these advisory rates, in fixing premiums to be charged and to thus destroy all competition between insurance companies in this state.

In other words, I think it will be conceded that the prime object and purpose of our anti-trust statute was to prevent combinations or agreements which would destroy competition in the particular matter of fixing rates for fire insurance.

In *Eastern States Lumber Dealers Association* v. *The United States,* 234 U. S. 600, the supreme court of the United States said that it was an unlawful combination and conspiracy for retail lumber dealers to circulate among themselves a list of all wholesalers who were selling to the retail trade.

The court held that upon a mere proof of the circulation of this black list, so called, among the retailers made an implied agreement, without any express agreement, was made out, in restraint of trade and violative of the Sherman Anti-Trust law. See *Grenada Lumber Company* v. *State of Mississippi,* 217 U. S. 733.

Again in *Carroll* v. *The Greenwich Insurance Company,* 199 U. S. 401, the supreme court of the United States held

that the act of the state of Iowa of 1897 prohibiting combinations of insurance companies as to rates, commissions and methods of transacting business was not unconstitutional or in violation of the Fourteenth Amendment to the Constitution of the United States, which ends, the contention on that subject in this case.

So we say here we may concede that it was perfectly lawful for the companies to have employed the advisory bureau to gather all the information as a basis for an insurance contract and to use it, but "an agreement between the companies relating to the rates which may be based on those results," is quite a different thing, and that this agreement "readily would be inferred if they were found all to charge the same rates." In this case we have the direct authority for an implied agreement from the mere fact of charging uniform rates.

So here we have the case of all these companies using all this information gathered by the advisory bureau and 'on that uniformly using the uniform rates prepared by said bureau, and it seems to me therefore that a blind man would infer that there was an agreement to charge the same rates and to maintain the same; the prevention of which is the object of our anti-trust laws. We have endeavored as speedily as possible to present this question for final determination by this tribunal, well knowing that the public interests demanded a speedy settlement for the questions involved.

*Teat & Potter* for Stokes V. Robertson, *Amicus Curae.*

We base our stand in this case squarely upon what we consider to be two fundamental propositions. The first is that where a cause is set down on bill and answer: That the answer and every allegation therein is taken as true; and second, that this court will only pass on such matters as are necessarily involved in the decision of this cause and will not in any way attempt to prejudice the case of the revenue agent in his anti-trust suit. Standing upon

these two fundamental principles, we will attempt to show the court that under the peculiar state of this record that no question of an implied agreement, nor the legality of the methods of the rating bureau can arise, as the defendants in their answer, specifically deny each and every allegation in the complainant's bill and state that they had not agreed to fix rates; that they had not subscribed to the rates of the bureau and as far as they knew had never used the same, and that if their agents had used the same it was without their knowledge and authority.

While the law of conspiracy admits of a very wide range of evidence and while circumstantial evidence of course may establish a conspiracy, yet, so far as we have been able to find where it is admitted that no agreement was entered into, and nothing unlawful was done by the defendants, never have the defendants been found guilty.

Let us now take up that part of the record that relates to the use of the rates, agreements, etc., paragraph by paragraph, as under our view of the law this constitutes the facts in the instant case.

In paragraph six we find that the defendants deny that on January 1, 1921, they entered into or became a party to an agreement or combination to regulate and fix the price of the premiums to be paid for insuring property against loss or damage by fire and the defendants state that any such charge is false, untrue and without any foundation whatsoever, in fact or in law.

In paragraph seven of the answer defendants deny that on each and every day since January 1, 1921, they became a party to an agreement, combination and conspiracy to fix the price or premium to be paid for insuring property against loss or damage by fire and they state that such charges are absolutely false and untrue and they deny utterly and unqualifiedly that there was any agreement, combination or conspiracy as alleged in the bill.

In paragraph eight, defendants deny that they carried out any unlawful agreement or combination whatsoever, and especially in the manner alleged in the bill that is

by allowing the bureau to fix the price to be paid for in-
suring property against loss by fire, and they deny that
they have ever subscribed for the service of the said bureau;
deny that they have ever knowingly used the rates of the
bureau and deny that they have ever entered any agree-
ment to charge the public as the price to be paid for in-
suring property against fire, whatever price the bureau
should fix.

In paragraph nine, they deny that the premiums they
charge in their policies were those prescribed and fixed by
the bureau and they especially deny the allegations in para-
graph nine of the bill charging them with this fact as be-
ing false and untrue in every particular.

In paragraph ten the defendants deny that they did
contract and agree with each other by which other persons
than themselves, their proper agents, officer or employees,
to-wit, the Mississippi Inspection & Advisory Rating
Bureau did dictate and control and did have the power to
dictate and control the management of their business in
the matter of fixing rates and they affirmatively state that
said charge and allegations is especially false and untrue.

In paragraph eleven, defendants specifically deny that
they entered into an agreement to maintain the price to be
paid for insuring property after the price to so insure had
been fixed by the bureau and then they again deny all such
allegations as being false and untrue in every particular.

In paragraph thirteen of the answer, they deny that they
ever procured the information and rates provided by the
bureau on that they were then acting under said bureau's
rules and regulations or that they bound themselves to-
gether to be governed as to the rates to be charged by the
bureau's rates. They then further deny that they were en-
gaged in the Fire Insurance business in Mississippi in such
a manner as to destroy competition therein.

In paragraph fourteen, on page 61 of the record, they
deny that they are relying upon the text book for rates
fixed by the bureau or that they are in any manner violat-
ing the anti-trust laws of the state.

In paragraph seventeen they stated that they never sub-scribed to the rates furnished by the bureau or that they agreed among themselves to use the rates. In this para-graph, on page 3 of the record they state, "that it may be true that their agents (the same being the agents of the old line companies that had left the state) did use and adopt as a basis for fixing the rates, the information and advice promulgated by the rating company and while your defendants deny that the use of said rates were au-thorized by or used under the instruction of your defend-ants, still your defendants aver that the use of the said rates, information and advice furnished by said agent, even if authorized by your defendants or any of them which in fact is not true, as a basis for fixing rates for insuring property in the state of Mississippi was in no sense a vio-lation of the anti-trust law or any other law of the state." This is the only part of the bill upon which the district attorney could possibly reply upon on this appeal."

The rest of the answer contains nothing more than a homily upon the great blessing and benefits that flow to the insuring public from the operation of the Bureau and we contend that the same is absolutely immaterial and was possibly put into the answer by the defendant out of an abundance of caution.

We do not see how a decree could possibly be rendered against these defendants on the simple allegation that it may be true that some of their agents did, at some time, without their knowledge, authority or consent, use some of the information hitherto promulgated by the bureau dur-ing the two or three months they operated in Mississippi, after they had specifically denied every allegation of a conspiracy; specifically denied that they had subscribed for or used these rates or that they had combined in any manner whatsoever and stated that every allegation in said bill was false and untrue.

We find in Mr. Miller's bill nowhere any statement that the agents were using uniform rates throughout the state, but in his brief he says that the case should be reversed

because "the answer does not deny that their agents were conducting the business of several defendants as charged in the bill." It appears to us that a complete answer to this statement of fact in Mr. Miller's brief is found in the specific denials that these companies or any of them ever conspired, combined confederated or agreed, first to use the rates, second, to purchase the rates; third, to maintain the rates; and fourth, to allow the bureau to dictate the rates.

It may be that where these defendants who entered the state and placed the conduct of their business in the hands of agents, who had hitherto represented the old line companies and had used the rates of the bureau ever since they had been in the business, that in some instances some of the agents would use in some of their policies the rates as declared by the bureau. But can merely and occasionally the using of these rates where it is specifically denied that there was an agreement to use the rates, become the basis of an implied conspiracy, where the answer is admitted to be true?

In the main, we agree with the conclusions of law as stated in Mr. Miller's brief, but we feel that under the state of this case that this law has no application. However we find one marked inconsistency in his brief, and one admission of law that we will, at the proper time, strenuously combat. That is as follows: On page five of his brief he uses the following language: "I state in advance that I have no doubt about the authority and legality of the advisory and rating bureau to make the necessary surveys, classifications and advisory rates." Yet, we find him undertaking to prove an implied conspiracy from this "so called" legal method of fixing rates. At the proper time we will take issue with this view of the legality of the operation of the bureau, and especially where it can be shown that this operation extended over some years, but as we conceive this case, it is unnecessary to do so here, as these defendants were not subscribers of the

bureau and denied that they knowingly used the rates, this admission has no place in this case.

We also disagree with many, if not all, of the conclusions of law stated in the brief of appellee. However, we do not feel it necessary to go into a long discussion in this brief of these questions.

The court of necessity must know that we hold no brief for the conduct of the appellees. We do not represent them, never have, and in all liklihood never will, and the only interest that we can possibly have in this matter is, as a friend to the court, to point out what we conceive to be the true issue in the instant case in an endeavor to show to the court that it is not necessary in this case, which is far indeed from a typical anti-trust insurance case to pass in any manner upon the legality of the operations of the rating bureau or as to what does or does not constitute an implied agreement to fix rates or in any manner whatsoever prejudice any of the questions that might be involved in the revenue agent's case against the fire insurance companies theretofore operating in the state.

It will be noted in the case at bar that counsel for appellant concede in their brief that the methods of doing business employed by the rating bureau are legal and correct, and counsel for appellee, though expressly denying that they used the rates of the rating bureau, undertake to defend the methods of business adopted by the rating bureau.

The pleadings in this case show that the appellees were not subscribers to the rating bureau, and had not knowingly used the rating bureau's rates, and that if such rates had been used it was without their knowledge or consent.

Clearly then, the questions as to the buying and selling of rates, the general use of them by those who do buy and sell them, and the necessity for a uniform or standard rate and similar questions are not involved in this controversy.

The issues last mentioned will in all liklihood be presented to this court in the suits of the revenue agent above

mentioned, where upon proper pleadings and evidence the state revenue agent has taken issue with the views expressed by the distinguished district attorney. We, therefore, urge that in passing upon this case that the court expressly state the facts of this particular case and confine its decision as nearly as possible to the record here presented without passing favorably or unfavorably upon issues necessarily and properly involved in our own suit, but not involved in the present suit.

*Wells, Stevens & Jones,* for appellee.

1. Under the pleadings in this case it is utterly impossible for any combination or conspiracy in violation of the said anti-trust law to be found to exist by the court. It is admitted in the bill of complaint that there is no evidence to be had of any express agreement. It is admitted that if there is any such agreement, it only arises from an implication to be drawn from the continued use of the same rates by all of the defendants to-wit: The rates fixed by the Mississippi Advisory Rating & Inspection Company.

How utterly absurd is any such contention with great deference to counsel for complainant, will be seen by the court when it observes that the answer expressly and in great detail denies any such agreement to exist and emphatically denies that the officials of the defendant companies had ever subscribed for or used or had in their posession any of the rates of the said Advisory Rating & Inspection Company, and denied that they had ever directed their agents to use such rates and that if use had ever been made of them by their agents that it was not under their instructions.

Counsel for appellant cites authorities in his brief to show that direct evidence of a conspiracy is difficult to get, and that such conspiracies are not susceptible of proof by direct or positive evidence, but that it may be implied from circumstances. He cites the case of *Carroll* v.

*Greenwich Ins. Co.,* 199 U. S. 401, and seems to build his whole case upon this decision of the supreme court of the United States to the effect that an agreement between the companies readily might be inferred if they were found all to charge the same rate. But there is absolutely no evidence to that effect or allegation by the defendants that the same rates were used by all the defendants. We challenge counsel for appellant to cite one case in all the annals of the anti-trust litigation of the United States to sustain any such contention.

This advisory rating company was not organized by the insurance companies formerly doing business in this state, nor according to the pleadings by the defendant-appellees in this cause, was it a child of their creation nor did they control it in any way. The case of the *Grenada Lumber Co.* v. *The State of Mississippi,* 217 U. S. 433, therefore is not in point, nor is the case of *Fire Insurance Companies* v. *State of Mississippi* (Popularly known as the Southeastern Tariff Association Case), 75 Miss. 24. Likewise the case of the *Eastern States Lumber Dealers* v. *The United States,* 234 U. S. 600, where the retail lumber dealers issued a black list of the wholesalers who sold direct to the retail trade, has no bearing on the case at bar.

2. Even if the court could be brought to believe that the pleadings in this case justified the inference by this court that these defendant companies were using the rates of the Mississippi Advisory & Inspection Rating Company, surely such use alone constitutes no violation of the law. This is true for the following reasons:

A. The state of Mississippi had, as shown by the pleadings, incorporated such rating company for the specific purpose of selling such rates, and to so hold would convict the state not only of folly but of the rankest injustice. How could the state justify itself when it authorized its incorporators to incorporate such company for the purpose of selling such rate and advice, and then to penalize the purchaser (appellees) at the rate of five thousand dollars per day for purchasing such information, under the cir-

cumstances shown by this record? *Cole* v. *State,* 91 Miss. 650; *German Alliance, etc.* v. *Kansas,* 233 U. S. 411-420; *New York Life Ins. Co.* v. *Deer Lodge Co.,* 231 U., S. 495; *Paul* v. *Virginia,* 8 Wall. 168, 19 L. Ed. 357; *Ducas* v. *Chicago,* 10 Wall. 410, 19 L. Ed. 972; *Liverpool & Life & F. Ins. Co.* v. *Massachusetts* (*Liverpool & Life Ins. Co.* v. *Oliver*), 10 Wall. 566, 19 L. Ed. 1029; *Fire Asso. of Philadelphia* v. *New York,* 119 U. S. 110, 30 L. Ed. 342, 7 Sup. Ct. Rep. 108; *Hooper* v. *California,* 155 U. S. 648, 39 L. Ed. 297, 5 Inters. Com. Rep. 610, 15 Sup. Ct. Rep. 207; *Noble* v. *Mitchell,* 164 U. S. 367, 41 L. Ed. 472, 17 Sup. Ct. Rep. 110; *New York L. Ins. Co.* v. *Cravens,* 178 U. S. 389, 44 L. Ed. 1116, 20 Sup. Ct. Rep. 962; *Nutting* v. *Massachusetts,* 183 U. S. 553, 46 L. Ed. 324, 22 Sup. Ct. Rep. 238.

We also call the court's attention to the observations of Mr. Justice LAMAR in his dissenting opinion in the case just quoted from, as follows: Insurance is not production; nor manufacture; nor transportation; nor merchandise. And this court in *New York L. Ins. Co.* v. *Deer Lodge County,* at the present term 231 U. S. 495, 58 L. Ed. 332, reaffirmed its previous ruling that insurance is not commerce, not an instrumentality of commerce, not a transaction of commerce, but simply contracts of indemnity against loss by fire.

With this premise, Mr. Justice LAMAR proceeds to argue in a forcible fashion that the state had no right to regulate the price of a private or personal contract but the point we are here stressing is the fact that in both the majority opinion and the dissenting opinion the business of providing insurance is recognized to be a service, whether private or public, and that in the furnishing of this service the companies were not furnishing an article of trade or commerce. *General Accident Fire and Life Assurance Co.* v. *Walker,* 99 Miss. 408.

This statute positively requires uniformity in rates of life insurance and prohibits class distinction or any discrimination in favor of individuals of the same class. Under this statute there may indeed be a competition in

hustling for the service or in getting the business, but there can be no competition in the rates offered. There can be no material distinction between the business of furnishing life insurance and the business, or preferably, the profession of rendering service for fire insurance; it is no longer a business but a profession. The theory of the bill in this cause is bottomed altogether upon the assumption that it is unlawful to have uniform rates for fire insurance and that if the companies are found to be furnishing fire insurance at uniform or standardized rates, an unlawful conspiracy must be implied. If we are correct in our contention that subdivision O of the anti-trust statute forbids the furnishing of service in one locality cheaper than in in another, then what are fire insurance companies to do without subjecting themselves to prosecution?

We direct the court's attention also to the fact that the latter clause of chapter 119, Laws of 1908, section 3282, Hemingway's Code expressly provides: "And it shall be sufficient to make out a *prima-facie* case of the violation of subdivision O to show a lower charge for the services therein rendered in one locality than in another."

If the business of furnishing insurance, therefore, comes within the provisions of subdivision O, it is positively dangerous for the companies to charge a lower rate in one locality than another. There is a well-recognized basic rate of writing insurance. This basic rate is determined by the experiences of the companies on that class of property or that particular hazard. The basic rate for writing life insurance is based upon the mortality tables. In both instances the companies can only determine a basic rate by taking into account the long experience of mankind and gamble against the contingencies of the future by what the past reflects.

D.   Our court has held that merely because a corporation delegates to or employs some other corporation to perform some of its duties, that this in itself is no violation of the anti-trust law. *Y. & M. V. R. R.* v. *Searles*, 85

Miss. 520; *Y. & M. V. R. R.* v. *Crawford,* 102 Miss. 355; *Covington* v. *Keith,* 139 U. S. 128, 35 L. Ed. —

E.   Our anti-trust statute invoked by the complainant in this case was not intended to cover and does not cover any contracts or acts which would not have been invalid under the common law. *Cumberland Tel. Co.* v. *State,* 100 Miss. 116; *Sivley* v. *Cramer,* 105 Miss. 13; *Y. & M. V. R. R. Co.* v. *Crawford,* 107 Miss. —; *R. R. Co.* v. *Searles,* 85 Miss. 520; *Telephone Co.* v. *State,* 100 Miss. 102.

This doctrine, as given in the *Crawford case,* 107 Miss. 355, stands today as a fundamental, cardinal rule of construction when determining in all cases whether an agreement or an alleged combination violates our anti-trust law.   The arrangement, whatever it may be, must necessarily be inimical to the public welfare.   The purpose of this review of the authorities is to point the court's attention to the fact that there is absolutely no showing in this record that the public has been imposed upon.   Nothing is charged, admitted or proven that injures the public. *Continental Ins. Co.* v. *Board of Fire Underwriters of the Pac.,* 67 Fed. 310.

In the case of *Queen Ins. Co. et al.* v. *State of Texas,* 22 L. R. A. 483, the supreme court of Texas expressly held as reflected by head note No. three: "It is not illegal at common law for insurance companies to make a combination to establish uniform rates of insurance and of commissions to agents."

In the Kentucky case of *Louisville Board of Fire Underwriters* v. *Johnson,* 119 S. W. 153, 24 L. R. A. (N. S.) 153, the syllabus reads: "A rule of a board of fire underwriters of a city organized to promote harmony and correct practice in fire underwriting, that no member shall take the agency of a company which is already represented in the city is not unreasonable, arbitrary or oppressive and violates no principle of public policy.   To this case is appended in L. R. A. a note on "Legality of combination among underwriters." *Harris* v. *Commonwealth,* 73 S. E. 561, 38 L. R. A. (N. S.) 458.

3. Our second proposition is this; It is not unlawful to have uniform insurance rates. Considering, therefore, that the companies are found using uniform rates, this, in itself, is consistent with good faith.

We desire to make the additional point, that if the defendants are guilty at all they are guilty of a felony. In the note found in 2 American & Eng. Annotated Cases, pages 72, and 74, we find the following statement: "It has been held that where the determination of a question in a civil action involves the establishment of the fact that either party has been guilty of a criminal act, the other party, in order to obtain a determination of such question in his favor must overcome by a fair balance of testimony, not only the evidence introduced by the party so charged, but also the legal presumption of innocence, which exists in every case, citing authorities.

So we maintain that the averments of the bill in this cause must not only be shown by a preponderance of the evidence, but even that they should be shown beyond a reasonable doubt.

SYKES, J., delivered the opinion of the court.

Hugh B. Miller, district attorney of the Fourteenth judicial district of the state of Mississippi for the use of the state, by bill in the chancery court of Pike county, seeks to collect certain penalties from the defendant insurance companies. The bill is based upon section 502, Code of 1906, as amended by chapter 119, Laws of 1908. The two sections claimed to be violated being sections 3281 and 3282, Hemingway's Code, those portions of section 3281 alleged to be violated are as follows:

"A trust and combine is a combination, contract, understanding, or agreement, expressed or implied, between two or more persons, corporations, or firms, or association of persons, or between one or more of either with one or more of the others. . . .

"(h) By which any other persons than themselves, their proper officers, agents and employees shall, or shall have the power to, dictate or control the management of business; or

"(i) To unite or pool interests in the importation, manufacture, production, transportation, or price of a commodity; and is inimical to the public welfare."

That portion of section 3282, Hemingway's Code, alleged to have been violated is as follows:

"Any corporation organized under the laws of this or any other state, or country, and transacting or conducting any kind of business in this state, or any partnership or individual, or other association of persons whatever, who are now, or shall hereafter create, enter into, or become a member of, or party to, any pool, trust, combine, agreement, combination, confederation or understanding, whether the same is made in this state or elsewhere, with any other corporation, partnership, individual, or with any other person, or association of persons, to regulate, or fix in this state . . . the price or premium to be paid for insuring property against loss or damage by fire, lightning or tornado, or to maintain said price when so regulated or fixed, or who are now or shall hereafter enter into, become a member of or party to, any pool, agreement, contract, combination, association or confederation, whether made in this state or elsewhere, to fix or limit in this state . . . the price or premiums to be paid for insuring property against loss or damage by fire, lightning, storm, cyclone, tornado, or any other kind of policy issued by any corporation, partnership, individual, or association of persons aforesaid, shall be deemed and adjudged guilty of a conspiracy to defraud, and subject to the penalties as provided by chapter 145, of the Code of 1906."

The bill also makes party defendants certain resident agents of the insurance companies. The bill was filed on March 16, 1921. Among other things, it charges that the defendant fire insurance companies, since the 1st day of January, 1921, have been actively engaged in the business

of fire insurance in this state; that some of the resident·
agents are representing some of the insurance companies,
and other agents are representing other insurance com-
panies, and together all of the agents named defendants
represent all of the insurance companies doing business in
this state; that on or about the 1st of January, 1921, the
insurance companies and each of them entered into and be-
came a party to an agreement and combination with each
other and every other fire insurance company to regulate
and fix within this state the price or premium to be paid
for insuring property; that this agreement and combina-
tion is a conspiracy to defraud, and is contrary to chapter
145, Code of 1906, and the amendments thereto, and had
the effect of and did injure the insuring public of the state.

Paragraph 7 of the bill alleges that on each and every
day since January 1, 1921, the insurance companies and
each of them have become a party to an agreement and
combination with each and every other insurance com-
pany to fix the price or premium to be paid for insuring
property within the state, and constitutes a conspiracy to
defraud under this law, and that this unlawful combina-
tion and agreement has continued to the time of the filing
of the bill, and will continue as long as the companies are
permitted to do business within this state.

Paragraph 8 charges the manner in which defendants
are carrying out this alleged unlawful agreement as fol-
lows: That there is within the state a corporation known
as the Mississippi Inspection & Advisory Rating Bureau,
chartered and doing business under the laws of this state,
which corporation declares and fixes the rate to be paid
by the public for insuring property from loss by fire or
damage, and that each of the insurance companies did en-
ter into and become a party to an agreement and combina-
tion with each other to charge the public the prices to be
paid for insuring property in this state, whatever prices
said bureau should fix; that this bureau would from time
to time declare and fix what price or premium should be

paid by the public to the insurance companies throughout the state, and would so notify said insurance companies.

Paragraph 9 alleges that the insurance companies since January 1, 1921, have issued policies and collected premiums thereon, which premiums were those as prescribed and fixed by the bureau in conformity with the above-mentioned agreement, combination, and conspiracy to defraud, and that each of said insurance companies did contract and agree together and combine with each other to place the control of their business of so insuring property, to the extent of fixing the price or, premium to be paid by the public in the power of this rating bureau.

Paragraph 10 · alleges that these insurance companies did contract, agree, and combine with each other and every other insurance company by which other persons than themselves, their proper officers, agents, or employees, to wit, the said Mississippi Inspection &, Advisory Rating Bureau, did dictate and control and did have the power to dictate and control the management of their business in the matter of fixing the prices and premiums to be paid, and that this has continued up until the time of the filing of the bill, all of which constituted an unlawful combination and conspiracy against the interest of the people of the state.

Paragraph 11 alleges an agreement and combination among these insurance companies to maintain the price or premium to be paid for insuring property after the price to so insure had been determined and fixed by this bureau, and that each and every one of these insurance companies have fixed and maintained the prices and premiums as fixed and determined by this bureau in pursuance of this agreement.

Paragraph 12 alleges that these agreements, combinations, and conspiracies, and all acts done by the defendant insurance companies in pursuance thereto, were and are inimical to the public welfare, unlawful and criminal conspiracies, and did and do now destroy competition in the matter of rates, and did have the effect of, and will have

the effect of and did injure, and will injure, the insuring public of the state, causing great damage to the public.

Paragraph 13 alleges the institution by the revenue agent of suits under these statutes against other insurance companies for alleged violations of these laws, and that the insurance companies sued by the revenue agent have left the state and ceased to do business therein, and that the companies herein sued have come into the state since that suit was instituted. There are other allegations in this paragraph not material to a decision of the case. It is then alleged in this paragraph that the present defendant insurance companies are seeking to evade the provisions of the anti-trust laws of the state by refusing to subscribe to the information furnished by the Mississippi Inspection & Advisory Rating Bureau, but that they have obtained this information in an effort to evade the laws, but that they have bound themselves by an agreement to obtain this same information as to the hazards and risks, and all other information necessary to form the basis of a fire insurance contract, which really belong to and is furnished by this bureau; but to avail themselves of it they have appointed the same men as agents, who represented the old companies that have left the state, and through these agents procured the information and the rating provided by the bureau; and that they are now acting under the rules and regulations of this bureau, and have bound themselves in an unlawful agreement to be governed entirely as to the rates to be charged and all other things provided by said bureau; and that they are now using these rates and information, and are agreeing unlawfully to be bound in all the insurance business they are doing absolutely by the rates fixed by this bureau; and that they are actually engaged in doing business in a manner that does destroy competition in the matter of rates, which acts are inimical to the public welfare, unlawful, and are criminal conspiracies.

Paragraph 14 alleges that by getting possession of all the information furnished by this bureau and by getting

possession of the rates fixed by the bureau, by appointing the agents of old companies who are in possession of this information, that the insurance companies did enter into and become a member of an agreement and combination with each other to charge the public for insuring property the price fixed by this bureau, and whatever price the bureau should fix.

Paragraph 15 alleges that none of the defendant insurance companies has any schedule of rates, but that the schedule of rates of each company is a text-book from which all rates as made by classifications, the application of which is made to the various properties in the state by the ratemakers, showing all the risks attached to said property, and this schedule of rates, with all the information as to risks incident to the property, is contained in this text-book prepared by the Mississippi Inspection & Advisory Rating Bureau, and that none of said defendants are making or having made any physical examination of the property before taking any risks thereon, but all are acting alone upon the information furnished by the text-book of rates fixed by the bureau; and that all of the defendants, by agreement and combination, rely upon the information furnished by this text-book prepared by the bureau, and agreed to be bound by the schedule of rates fixed by the bureau; that none of these companies have any books or schedules, neither have they any rates other than those furnished by the bureau, but that they rely upon the text-book and rates and schedules fixed by the bureau.

Paragraph 16 alleges that the complainant is not informed of any express agreement on the part of the defendants authorizing the Mississippi Inspection & Advisory Rating Bureau to fix any particular rate or premiums, and is unable to prove by any direct evidence any express agreement whereby the said bureau is authorized to represent the defendants in fixing the rates, or is given authority by said companies to name the premium or rates for fire insurance in Mississippi, but avers that the continued and

persistent use by the defendants of the uniform rates promulgated by the bureau violates the anti-trust laws of the state, and is sufficient to show an implied agreement on the part of the defendants to maintain the price or premiums as promulgated by said bureau, and from this implied agreement complainant charges that there arises an unlawful agreement to maintain rates , or the price of premiums to be charged, and violates these statutes.

Quite an elaborate answer was made by the insurance companies. In paragraph 6 they deny that, on or about the 1st day of January, 1921, they and each of them entered into an agreement and combination with each other and every other fire insurance company to regulate and fix within the state the price or premium to be paid for insuring property. They deny that any such agreement or combination was entered into.

Paragraph 7 denies that on every day since January 1st they became a party to an agreement and combination to fix the price or premium to be paid for insuring property within the state. In this paragraph this denial is also couched in these words:

"Your defendants absolutely and unqualifiedly deny that there was any such combination, agreement or conspiracy as that referred to in said bill of complaint."

In paragraph 8 the defendants deny that they have carried out any unlawful agreement or combination whatever in the manner and form as stated in paragraph 8 of the bill, copying therein for the purpose of denial the allegation of that paragraph of the bill. This paragraph relates to the agreements to intrust and the intrusting to the bureau of the matter of fixing the rates. They deny that they have ever subscribed for the services of the Mississippi Inspection & Advisory Rating Bureau, and deny that they have ever used the rates of this bureau, and deny that any of them became a member of any agreement or combination to charge the public the price to be paid for insurance fixed by this bureau.

In paragraph 9 the defendants deny that the premiums charged by them were those prescribed and fixed by this bureau in conformity with an agreement, combination, or conspiracy to defraud, and deny that the insurance companies did contract and agree together and combine with each and every other insurance company to place the control of their business of so insuring property to the extent of fixing the price or premium to be paid by the insuring public in the power of this bureau. They deny the allegations of section 9 of the bill as being false and untrue in every particular.

In paragraph 10 the defendants deny that each and every one of them did contract, agree, and combine with each other by which other persons than themselves, their proper officers, agents, or employees, to wit, the Mississippi Inspection & Advisory Rating Bureau, to dictate and control, and did have the power to dictate and control, the management of their business in the matter of fixing the price and premiums to be charged. They deny any continuation of any such alleged agreement.

In paragraph 11 they deny that each of them did enter into any agreement and combination with each and every other insurance company to maintain the price or premiums to be paid, as the price had been determined and fixed by this bureau, and deny that since January 1st and up to this time they have maintained the price or premium as fixed by this bureau, in pursuance of an agreement.

In paragraph 12 they deny any agreement, combination, or conspiracy between them, or any acts done by them as charged, and deny that there is any such agreement or combination as is inimical to the public welfare, unlawful or a criminal conspiracy, or that they entered into such combination or agreement so that as a result thereof such agreement destroyed competition in the matter of rates, and deny any continuance of any such alleged agreement.

Paragraph 13 admits the institution of a suit by the state revenue agent against other insurance companies,

and denies matters not necessary to be here set out. It denies that these defendants have come into the state and are seeking to evade, or have evaded, the provisions of the anti-trust laws of the state by refusing to become subscribers and pay for the information furnished by the Mississippi Inspection & Advisory Rating Bureau, and denies that they have obtained the same information in an effort to evade or defraud the insuring public of the state. It states that they did not subscribe to this bureau because the state revenue agent in his suit had charged that the securing of this information was a violation of the anti-trust laws of the state. It denies that the defendants have bound themselves by an agreement to obtain this information as a basis for making an insurance contract. It denies that to avail themselves of this information they have appointed the same men as agents who were agents of the old companies who have left the state; and denies that they have ever procured the information provided by the bureau, and denies that they are now acting under the rules and regulations provided by this bureau; and denies that they have bound themselves in any agreement to be governed entirely as to rates to be charged by the bureau. They deny that by employing these agents of the old companies which have left the state that they have come into possession of all the information to be derived from the bureau, and that they are now using it, and deny that they have any agreements to be bound in all insurance business by the rates fixed by the bureau. They deny that the manner in which they are doing business in the state of Mississippi destroys competition, and deny that the rates charged by them are inimical to public welfare, or are unlawful, or a criminal conspiracy.

Paragraph 14 is in substance a denial of the corresponding paragraph in the bill in substance in the language of the allegation.

Paragraph 15 denies that none of the defendants have any schedule of rates. It denies that the schedule of rates is the text-book from which all rates are made by classifi-

cation as contained in the text-book prepared by the Mississippi Inspection & Advisory Rating Bureau. It denies that none of these defendants is making a physical examination of the property before taking the risks, and denies that they are all acting alone upon the information furnished by the text-book of the bureau. It denies that they and each of them by agreement and combination rely upon the information furnished by the text-book prepared by this bureau, and denies that they agreed to be bound by the schedule or rates fixed by the bureau. It denies that they are not making schedules of their own. In short, there is a detailed denial in this paragraph of the allegations in the corresponding paragraph of the bill.

Paragraph 16 of the answer is immaterial.

Paragraph 17 is a denial by the defendants that they, or any of them, have subscribed to the rates or information furnished by the Mississippi Inspection & Advisory Rating Bureau, or any other rating company, or that they agreed among themselves or with each other or with any other insurance company to use the said rates, information, or advice, furnished by said rating bureau in fixing rates on property insured in this state.

It is then admitted in the answer that the defendants have employed as their agent in the state many of the local agents of the old insurance companies which have ceased to do business here because these agents have established an insurance business, and it was therefore advantageous to these defendants to employ them. They aver that the old insurance companies were subscribers to the rates furnished by the rating bureau, and that these agents, employed by them are either in possession of these rates or are acquainted with them; that these rates were furnished to these agents by the old insurance companies to be used by the agents at their discretion, but under no instruction to use the same except for the information of the agents in writing policies and determining proper rates. It is then admitted that these agents after inspecting the various risks would use and adopt as the basis for fixing rates on

policies for these defendants the rates, information, and advice promulgated by this rating bureau. The defendants deny that the use of these rates was authorized by them, but aver that the use of these rates, even if authorized by them, which in fact was not true, as a basis for fixing rates for insuring property, was in no sense a violation of the anti-trust laws.

The answer then sets out in detail the object and purpose of the incorporation of the Mississippi Inspection & Advisory Rating Bureau and the manner in which the information collected by it was used by the old-line insurance companies, none of which is necessary to be considered for a determination of this case.

Without going further into the detailed statements of the answer it is sufficient to say that all of the material averments in the bill were denied in detail in the answer, the answer following as a rule with its denials the specified charges of the bill. It will be noted that the material allegations of the bill are twofold: First, that they (the insurance companies) agreed among themselves to allow the Mississippi Inspection & Advisory Rating Bureau to absolutely fix the price or premium to be charged for fire insurance within the state and to be bound by the rates so fixed by this bureau. It is contended that the agreement to be absolutely bound by the rate fixed by the rating bureau was a delegation or turning over to this bureau of the conducting of its business in the matter of fixing its rates, and is alleged in the bill to be inimical to the public welfare, which it is claimed is a violation of subsections (h) and (i) section 3281, Hemingway's Code.

Second, that the insurance companies agreed among themselves as to the price or premium which should be charged for fire insurance, which is prohibited by section 3282 of Hemingway's Code. That either of these agreements would be a violation of the anti-trust statutes above quoted.

It will be noted that the bill alleges that the complainant is not informed of any express agreement by the defend-

ants authorizing this bureau to fix these rates, but avers that the continued and persistent use of the rates of this bureau by the defendants is sufficient to show an implied agreement to maintain the rates promulgated by the bureau. The answer in explicit terms denies every character of agreement between the insurance companies as to the fixing of the rates among themselves, or a delegation of the power to fix these rates to this bureau. The cause was set down by the complainant upon bill and answer before the time had elapsed for the taking of testimony; consequently, we must take the denials, the averments, and the admissions in the answer as being true. Section 603, Code 1906 (section 363, Hem. Code).

In this answer every conceivable character and kind of an agreement, confederation, or combination, either directly to fix rates among themselves or to delegate to this bureau the power to fix these rates is positively denied. The admissions in the answer, which we have set out, taken most strongly against the defendants, are merely to the effect that their agents, after making a physical examination of the property to be insured, have used the rates promulgated by this rating bureau as the basis upon which to arrive at a proper rate of insurance; that these defendants knew that these rates as promulgated by this bureau were in the hands of these agents, and knew that, these agents used these rates in determining what rate was to be charged. One of the material averments in the bill, which must be either admitted by the answer or proved, is the fact of an unlawful agreement, either directly among the companies themselves, or an agreement to absolutely delegate this power to this rating bureau and be bound by the rate established by the bureau. These agreements are denied specifically in the answer. One insurance company, in the absence of an agreement, could not violate this law by independently adopting as its rate of insurance the advisory rate of this bureau. This would not be an unlawful agreement with anybody. The fact that several insurance companies have adopted the rate promulgated

by this bureau, where the answer specifically denies any agreement of any kind among them, or an agreement to delegate this rate-fixing power to the bureau, is in no sense an adminission of a violation of the anti-trust laws, but is an express denial of one of the necessary facts to be proven, namely, the agreement.

It is unnecessary to consider in this opinion what would constitute an unlawful agreement under these laws or the character of proof necessary to sustain such an allegation, because the allegation is denied.   Neither are we called upon in this opinion to discuss these anti-trust laws.  They have been learnedly and exhaustively discussed by this court in the cases of *Fire Insurance Companies* v. *State,* 75 Miss. 24, 22 So. 99; *Railroad Co.* v. *Searles,* 85 Miss. 520, 37 So. 939; *Cumberland Tel. Co.* v. *State,* 100 Miss. 116, 54 So. 670, 39 L. R. A. (N. S.) 277; *Railroad Co.* v. *Crawford,* 107 Miss. 355, 65 So. 462, L. R. A. 1915C, 250.

The lower court was correct in dismissing the bill and which decree is affirmed.

*Affirmed.*