# COVINGTON STOCK-YARDS COMPANY *v.* KEITH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF KENTUCKY.

No. 33. Submitted October 22, 1890. — Decided March 2, 1891.

A railroad company, holding itself out as a carrier of live stock, is under a legal obligation, arising out of the nature of its employment, to provide suitable and necessary means and facilities for receiving live stock that may be offered for shipment over its road and connections, as well as for discharging such stock after it reaches the place to which it is consigned.

The duty to receive such stock cannot be efficiently discharged, at least in a town or city, without the aid of inclosed yards in which the stock offered for shipment can be received and handled with safety and without inconvenience to the public, while being loaded upon the cars in which they are to be transported. And the duty of the carrier to deliver cannot be safely and effectively performed except in and through inclosed yards or lots convenient to the place of unloading.

A carrier of live stock must be at all times in proper condition both to receive from the shipper and to deliver to the consignee, according to the nature of the property to be transported, as well as to the necessities of the respective localities in which it is received and delivered. It cannot, in addition to the customary and legitimate charges for transportation, make, or allow any agent it employs to make a special charge for merely receiving or merely delivering such stock in and through yards provided for that purpose.

In respect to the mere loading and unloading of the stock at a particular city, the carrier is required by the nature of its employment to furnish such suitable and convenient appliances as are reasonably sufficient for the business at that place.

THE case is stated in the opinion.

*Mr. E. D. Baxter* for appellant.

No appearance for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

On the 28th of January, 1886, George T. Bliss and Isaac E. Gates instituted in the court below a suit in equity against the Kentucky Central Railroad Company, a corporation of Ken-

tucky, for the foreclosure of a mortgage or deed of trust given to secure the payment of bonds of that company for a large amount; in which suit a receiver was appointed who took possession of the railroad, with authority to operate it until the further order of the court.

The present proceeding was begun on the 18th of June, 1886, by a petition filed in the foreclosure suit by Charles W. Keith, who was engaged in buying and selling on commission, as well as on his own account, live stock brought to and shipped from the city of Covington, Kentucky, over the Kentucky Central Railroad. The petition proceeded upon the ground that unjust and illegal discrimination had been and was being made against Keith by the receiver acting under and pursuant to a written agreement made November 19, 1881, between the railroad company and the Covington Stock-Yards Company, a corporation created under the general laws of Kentucky; the yards of the latter company located in Covington, and connected with the railroad tracks in that city, being the only depot of the railway company that was provided with the necessary platforms and chutes for receiving or discharging live stock on and from its trains at that city. The petition alleged that Keith was the proprietor of certain live-stock lots and yards in that city immediately west of those belonging to the Covington Stock-Yards Company, and separated from them by only one street sixty feet in width; that he was provided with all the necessary means of receiving, feeding and caring for such stock as he purchased, or as might be consigned to him by others for sale; and that his lots and yards were used for that purpose subsequently to March 1, 1886, and until, by the direction of the receiver, the platforms connecting them with the railroad were torn up and rendered unfit for use. The prayer of the petitioner was for a rule against the receiver to show cause why he should not deliver to him at some convenient and suitable place outside of the lots or yards of the said Covington Stock-Yards Company free from other than the customary freight charges for transportation, all stock owned by or consigned to him and brought over said road to Covington.

The receiver filed a response to the rule, and an order was entered giving leave to the Covington Stock-Yards Company to file an intervening petition against the railroad company and Keith, and requiring the latter parties to litigate between themselves the question of the validity of the above agreement of 1881. The Stock-Yards Company filed such a petition, claiming all the rights granted by the agreement referred to, and alleging that it had expended sixty thousand dollars in constructing depots, platforms and chutes, as required by that agreement.

Referring to that agreement it appears that the Stock-Yards Company stipulated that its yards on the line of the railroad in Covington should be maintained in good order, properly equipped with suitable fencing, feeding-pens and other customary conveniences for handling and caring for live stock, and to that end it would keep at hand a sufficient number of skilled workmen to perform the operations required of it, and generally to do such labor as is usually provided for in stock yards of the best class, namely, to load and unload and care for " in the best manner all live stock delivered to them by the party of the first part [the railroad company] at their own risk of damage while so doing, and in no event to charge more than sixty cents per car of full loads for loading and sixty cents per car for unloading, and no charges to be made for handling less than full loads, as per way-bills." The Stock-Yards Company also agreed to become liable for those charges, and to collect and pay over to the railroad company, as demanded from time to time, such money as came into its hands, the charges for feeding and caring for live stock not to be more than was charged for similar services and supplies at other stock yards of the country. The railroad company, upon its part, agreed to pay the Stock-Yards Company the above sums for loading and unloading and otherwise acting as its agent in the collection of freights and charges upon such business as was turned over to it by the railroad company; that it would require all cars loaded at yards for shipment South or East to be carefully bedded, which the Stock-Yards Company was to do at the rates usually charged in other yards; that it would

make the yards of the Stock-Yards Company its "depot for delivery of all its live stock," during the term of the contract, and not build, "nor allow to be built, on its right of way, any other depot or yards for the reception of live stock." The delivery of stock in cars on switches or sidings provided for the purpose was to be considered a delivery of the stock to the Stock-Yards Company, which, from that time, was to be responsible for the stock to the railroad company. To protect the business of the Stock-Yards Company from damage in case the railroad extended its track over the Ohio River, the railroad company agreed that during the term of the contract the rate of freight from all points on its road and connections should "not be less than five dollars per car more to the Union Yards of Cincinnati than the rate to Covington yards from the same points;" that its business arrangements with any other railroad or transportation line should be subject to this agreement; and that the yards of the Stock-Yards Company "shall be the depot for all live stock received from its connections for Cincinnati or Eastern markets." The agreement by its terms was to remain in force for fifteen years.

In the progress of the cause E. W. Wilson, by consent of parties, was made a co-petitioner and co-respondent with Keith.

. By the final decree it was found, ordered and decreed as follows: "It is the duty and legal obligation of the Kentucky Central Railroad Company, as a common carrier of live stock, to provide suitable and convenient means and facilities for receiving on board its cars all live stock offered for shipment over its road and its connections from the city of Covington, and for the discharge from its cars of all live stock brought over its road to the said city of Covington, free of any charge other than the customary transportation charges to consignors or consignees; and that the said petitioners, Keith and Wilson, live-stock dealers and brokers, doing business at the city of Covington, and proprietors of the Banner Stock-Yards at that place, are entitled to so ship and receive over said road such live stock without being subject to any such additional charges imposed by said receiver, said railroad company, or other person or corporation. The court further finds and decrees that

the alleged contract entered into by and between the said rail-
road company and the said Covington Stock-Yards Company,
of date the 19th day of November, 1881, does not entitle the
said Stock-Yards Company to impose upon any shipper of live
stock over said road, passing such stock through the yards of
said company to and from the cars of said railroad company,
any charge whatever for such passage.    It is stipulated in
said contract that said Stock-Yards Company shall establish
and maintain suitable yards or pens for receiving, housing, feed-
ing and caring for live stock, and to receive all such stock,
and load and unload the same upon and from the cars of said
company transported on or to be transported over said road
for a compensation of sixty cents per car load, to be paid by
said railroad company for and during the period of fifteen
years from the date of said contract, which has not yet ex-
pired, while the said railroad company agreed that it would
not during said period establish or allow to be established on
the line of its road or on its right of way in said city of Coving-
ton any other platform or depot than that of said Stock-Yards
Company for the receipt or delivery of such live stock.   .   .   .
The court doth further find that the general freight depot
of the said railroad company in the said city of Covington, at
the terminus of its road between Pike and Eighth Streets, is
not a suitable or convenient place for the receipt and delivery
of live stock brought to the said city or to be shipped there-
from over said road, and neither said railroad company nor
said receiver having provided such suitable depot or place
therefor, except the yards of said Stock-Yards Company, it is
now ordered and decreed that the said railroad company and
said receiver shall hereafter receive and deliver from and to
the said Keith & Wilson at and through the said Covington
stock yards all such live stock as may be brought to them or
offered by them for shipment over said road and its connec-
tions, upon the consent of said stock yards, in writing, that it
may be so done, being filed in this court and cause on or be-
fore the 1st day of January next after the entry of this decree,
free of any charge for passing through said yards to and from
the cars of said railroad company.   In default of such consent

being so filed, it is ordered and decreed that upon said Keith & Wilson putting the platform and chute erected by them on the land of said Keith adjacent to the live-stock switch of said railroad company north of said stock yards the said railroad company and said receiver shall receive and deliver all such live stock to said Keith & Wilson as shall be consigned to them or either of them or be offered by them or either of them for shipment at said platform. The said Keith & Wilson shall provide an agent or representative at said platform to receive such cattle as they may be notified by said railroad company or said receiver are to be delivered to them thereat, and they shall give the said railroad company or said receiver reasonable notice of any shipment desired to be made by them from said platform to conform to the departure of live-stock trains on said road."

. The railroad company, holding itself out as a carrier of live stock, was under a legal obligation, arising out of the nature of its employment, to provide suitable and necessary means and facilities for receiving live stock offered to it for shipment over its road and connections, as well as for discharging such stock after it reaches the place to which it is consigned. The vital question in respect to such matters is, whether the means and facilities so furnished by the carrier or by some one in its behalf are sufficient for the reasonable accommodation of the public. But, it is contended, that the decree is erroneous so far as it compels the railroad company to receive live stock offered by the appellees for shipment and to deliver live stock consigned to them, free from any charge other than the customary one for transportation, for merely passing into and through the yards of the Covington Stock-Yards Company to and from the cars of the railroad company. As the decree does not require such stock to be delivered in or through the yards of the appellant, except with its written consent filed in this cause ; as such stock cannot be properly loaded upon or unloaded from cars within the limits of the city, except by means of inclosed lots or yards set apart for that purpose, and conveniently located, in or through which the stock may be received from the shipper or delivered to the consignee, with-

out danger or inconvenience to the public in the vicinity of
the place of shipment or discharge; and as the appellant has
voluntarily undertaken to discharge the duty in these matters
that rests upon the railroad company, the contention just
adverted to, is, in effect, that the carrier may, without a
special contract for that purpose, require the shipper or con-.
signee, in addition to the customary and legitimate charges
for transportation, to compensate it for supplying the means
and facilities that must be provided by it in order to meet its
obligations to the public.    To this proposition we cannot give
our assent.

When animals are offered to a carrier of live stock to be
transported it is its duty to receive them; and that duty can-
not be efficiently discharged, at least in a town or city, with-
out the aid of yards in which the stock offered for shipment
can be received and handled with safety and without incon-
venience to the public while being loaded upon the cars in
which they are to be transported.  So, when live stock reach
the place to which they are consigned, it is the duty of the
carrier to deliver them to the consignee; and such delivery
cannot be safely or effectively made except in or through
inclosed yards or lots, convenient to the place of unloading.
In other words, the duty to receive, transport and deliver live
stock will not be fully discharged, unless the carrier makes
such provision, at the place of loading, as will enable it to
properly receive and load the stock, and such provision, at the
place of unloading, as will enable it to properly deliver the
stock to the consignee.

A railroad company, it is true, is not a carrier of live stock
with all the responsibilities that attend it as a carrier of goods.
*North Penn. Railroad* v. *Commercial Bank*, 123 U. S. 727,
734.    There are recognized limitations upon the duty and
responsibility of carriers of inanimate property that do not
apply to carriers of live stock.   These limitations arise from
the nature of the particular property transported.   "But,"
this court said, in the case just cited, "notwithstanding this
difference in duties and responsibilities, the railroad company,
when it undertakes generally to carry such freight, becomes

subject, under similar conditions, to the same obligations, so far as the delivery of the animals which are safely transported is concerned, as in the case of goods. They are to be delivered at the place of destination to the party designated to receive them if he presents himself, or can with reasonable efforts be found, or to his order. No obligation of the carrier, whether the freight consists of goods or live stock, is more strictly enforced."[1] The same principle necessarily applies to the receiving of live stock by the carrier for transportation. The carrier must at all times be in proper condition both to receive from the shipper and to deliver to the consignee, according to the nature of the property to be transported, as well as to the necessities of the respective localities in which it is received and delivered. A carrier of live stock has no more right to make a special charge for merely receiving or merely delivering such stock, in and through stock yards provided by itself, in order that it may properly receive and load, or unload and deliver, such stock, than a carrier of passengers may make a special charge for the use of its passenger depot by passengers when proceeding to or coming from its trains, or than a carrier may charge the shipper for the use of its general freight depot in merely delivering his goods for shipment, or the consignee of such goods for its use in merely receiving them there within a reasonable time after they are unloaded from the cars. If the carrier may not make such special charges in respect to stock yards which itself owns, maintains or controls, it cannot invest another corporation or company

---

[1] *Myrick* v. *Michigan Central Railroad,* 107 U. S. 102, 107; *Hall & Co.* v. *Renfro,* 3 Met. (Ky.) 51, 54; *Mynard* v. *Syracuse & Binghamton Railroad,* 71 N. Y. 180; *Smith* v. *New Haven & Northampton Railroad,* 12 Allen, 531, 533; *Kimball* v. *Rutland & Burlington Railroad,* 26 Vermont, 247; *South & North Alabama Railroad Company* v. *Henlein,* 52 Alabama, 606, 613; *Wilson* v. *Hamilton,* 4 Ohio St. 722, 740; *Ayres* v. *Chicago & Northwestern Railroad,* 71 Wisconsin, 372, 379, 381; *McCoy* v. *K. & D. M. R. Co.,* 44 Iowa, 424, 426; *Maslin* v. *B. & O. R. R. Co.,* 14 W. Va. 180, 188; *St. Louis & Southeastern Railway* v. *Dorman,* 72 Illinois, 504; *Moulton* v. *St. Paul, Minneapolis &c. Railway,* 31 Minnesota, 85, 87; *Kansas Pacific Railway* v. *Nichols,* 9 Kansas, 235, 248; *Clarke* v. *Rochester & Syracuse Railroad,* 14 N. Y. 570, 573; *Palmer* v. *Grand Junction Railway,* 4 M. & W. 749.

with authority to impose burdens of that kind upon shippers and consignees. The transportation of live stock begins with their delivery to the carrier to be loaded upon its cars, and ends only after the stock is unloaded and delivered, or offered to be delivered, to the consignee, if to be found, at such place as admits of their being safely taken into possession.

We must not be understood as holding that the railroad company, in this case, was under any legal obligation to furnish, or cause to be furnished, suitable and convenient appliances for receiving and delivering live stock at every point on its line in the city of Covington where persons engaged in buying, selling or shipping live stock, chose to establish stock yards. In respect to the mere loading and unloading of live stock, it is only required by the nature of its employment to furnish such facilities as are reasonably sufficient for the business at that city. So far as the record discloses, the yards maintained by the appellants are, for the purposes just stated, equal to all the needs, at that city, of shippers and consignees of live stock; and if the appellee had been permitted to use them, without extra charge for mere "yardage," they would have been without just ground of complaint in that regard; for it did not concern them whether the railroad company itself maintained stock yards, or employed another company or corporation to supply the facilities for receiving and delivering live stock it was under obligation to the public to furnish. But as the appellant did not accord to appellees the privileges they were entitled to from its principal, the carrier, and as the carrier did not offer to establish a stock yard of its own for shippers and consignees, the court below did not err in requiring the railroad company and the receiver to receive and deliver live stock from and to the appellees at their own stock yards in the immediate vicinity of appellant's yards, when the former were put in proper condition to be used for that purpose, under such reasonable regulations as the railroad company might establish. It was not within the power of the railroad company, by such an agreement as that of November 19, 1881, or by agreement in any form, to burden the appellees with charges for services it was bound to render without any

other compensation than the customary charges for transportation.

*Decree affirmed.*