(September 23, 1920.)

## CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, a Corporation, Respondent, v. KOOTENAI COUNTY, a Municipal Corporation, and EMIL ELDER, Auditor of Said County, Appellants.

[192 Pac. 562.]

RAILROADS—OPERATING PROPERTY—TERMINALS—TAXATION.

1. Under our statute, operating property of a railroad is assessable for taxation by the state board of equalization and nonoperating property by the assessor of the county in which it is situated.

2. In the statute defining operating property of a railroad, the word "terminal" means property used at the time of the assessment for the purpose of furnishing terminal facilities in the operation of the railroad.

3. Where a county assessor inseparably commingles property which he has jurisdiction to assess with property which he has no jurisdiction to assess in his description thereof on the assessment-roll, the entire assessment is void.

4. Where the assessment of property is void, it is not incumbent upon the owner thereof to tender payment of the taxes thereon as a condition precedent to his right to cancel a tax sale certificate based upon such void assessment.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. R. N. Dunn, Judge.

Action to cancel tax sale certificate and to quiet title. Judgment for plaintiff. *Affirmed.*

Bert A. Reed and F. W. Reed, for Appellants.

This is a suit in equity, and it is not only incumbent upon the plaintiff below to establish the allegations of its complaint by competent evidence, but it is also its duty to do equity before it is entitled to any relief. (*Northern Pac. Ry. Co. v. Kootenai County*, 19 Ida. 75, 112 Pac. 320.)

Land belonging to a railroad company not used as a part of the right of way or roadway, though bought with the intent to use it for that purpose when necessary, is not a part of the roadbed and should be assessed by local assessors; also, that land belonging to a railroad company and leased for commercial purposes will not be regarded as necessary or in use in the proper operation of the road and is to be assessed by the local assessors. (2 Elliott on Railroads, p. 131; *Red Willow County v. Chicago etc. R. Co.*, 26 Neb. 660, 42 N. W. 879; *San Francisco etc. Ry. Co. v. Stockton*, 149 Cal. 83, 84 Pac. 771; *Republican Valley etc. Ry. Co. v. Chase County*, 33 Neb. 759, 51 N. W. 132; *Grand Rapids etc. Ry. Co. v. City of Grand Rapids*, 137 Mich. 587, 4 Ann. Cas. 1195, 100 N. W. 1012; *Adams v. Kansas City etc. R. Co.*, 71 Neb. 549, 99 N. W. 245; *United New Jersey R. & Canal Co. v. Jersey City*, 53 N. J. L. 547, 22 Atl. 59; *United New Jersey R. & Canal Co. v. Jersey City*, 55 N. J. L. 129, 26 Atl. 135; *New Jersey Junction R. Co. v. Jersey City*, 63 N. J. L. 120, 43 Atl. 577; *In re New York Bay R. Co.*, 75 N. J. L. 115, 67 Atl. 513; *New York Bay R. Co. v. City of Newark*, 82 N. J. L. 591, 83 Atl. 962.)

R. H. Elder and F. M. Dudley, for Respondent.

The land involved being lawfully held as station and terminal property, was operating property assessable only by the state board of equalization, and the fact that it was not all in actual use in 1915 was not material. (*Milwaukee & St. P. R. R. Co. v. Board of Supervisors*, 29 Wis. 116; *Grand Rapids etc. Ry. Co. v. Grand Rapids*, 137 Mich. 587, 4 Ann. Cas. 1195, 100 N. W. 1012; *Binghamton Trust Co. v. Binghamton*, 72 App. Div. 341, 76 N. Y. Supp. 517; *Chicago,*

*St. P., M. & O. Ry. Co. v. Douglas Co.,* 122 Wis. 273, 99 N. W. 1030; *United New Jersey R. R. & Canal Co. v. Jersey City,* 55 N. J. L. 129, 26 Atl. 135; *Delaware, L. & W. R. Co. v. City of Newark,* 60 N. J. L. 60, 37 Atl. 629; *New Jersey Junction R. Co. v. Jersey City,* 63 N. J. L. 120, 43 Atl. 577; *In re New York Bay R. Co.,* 75 N. J. L. 115, 67 Atl. 513; *New York & G. Ry. Co. v. Mayor,* 79 N. J. L. 424, 75 Atl. 162; *New York Bay R. Co. v. City of Newark,* 82 N. J. L. 591, 83 Atl. 962; *Red Willow Co. v. Chicago, B. & Q. Ry. Co.,* 26 Neb. 660, 42 N. W. 879.)

The assessment having included "operating property" and having been made as an entirety, is void, even though some of the property included in the description should be held to be nonoperating property. (*Louisiana & A. R. Co. v. Bailey,* 115 La. 929, 40 So. 358; *Pfaff v. Terre Haute & I. R. Co.,* 108 Ind. 144, 9 N. E. 93; *Nashville etc. Ry. Co. v. Board of Equalization,* 122 Tenn. 1, 122 S. W. 467; *Chicago etc. R. Co. v. People,* 218 Ill. 463, 75 N. E. 1021; *Illinois Cent. R. Co. v. Cavins,* 238 Ill. 380, 87 N. E. 371; *Chicago etc. Ry. Co. v. Cass County,* 8 N. D. 18, 76 N. W. 239.)

The assessor having wrongfully assessed as one parcel two properties, one of which was assessable and one not, the entire assessment was void, and no valid tax was or could be levied thereon. There was and is, therefore, nothing equitably due. (*Sioux City Bridge Co. v. Dakota Co.,* 61 Neb. 75, 84 N. W. 607; *State v. Williston,* 20 Wis. 228; *Dumars v. Denver,* 16 Colo. App. 375, 65 Pac. 580.)

RICE, J.—This is a suit to cancel a tax sale certificate covering certain property of respondent in the city of Coeur d'Alene. The assessment on which the tax was levied was made by the assessor of Kootenai county. The property is described in the assessment as "all that tract or parcel of land lying south of the tracks of the Idaho & Western Railway Company," and consisted of about 2.9 acres. The respondent is the successor in interest of the Idaho & Western Railway Company. The land in question was obtained for terminal purposes, and was below the level of the low-

water mark of Lake Coeur d'Alene, but was subsequently filled in and improvements erected thereon.  The pleadings admit the ownership of the property by respondent, and we are expressing no opinion as to whether or not the property is subject to private ownership and taxable under the statute.

The following excerpt from the testimony of Mott Sawyer, witness on behalf of respondent, shows the actual situation with reference to the use of this property:

"Q. Have you ever used the land 50 feet south of the track?

"A. We have used nothing south of a line fifty foot south of the southerly track.  That has not been in actual use up to this time.

"Q. What use has been made of the fifty feet just south of the track?

"A. We have used about 12 feet south of the track as a portion of the right of way upon which the track stands so that we may have sufficient room—sufficient clearance between the side of the cars and the abutting property to avoid accident.  That leaves possible 38 feet or thereabouts between the track and the fifty foot line which has not been in actual use.

"Q. This fifty-foot line is an imaginary line drawn through the premises?

"A. Simply to designate the line of the right of way occupied by the tracks.  That is the customary width which we reserve wherever we purchase a right of way."

The law in force at the time this assessment was made was chap. 58, Sess. Laws 1913.  Sec. 11 of that act, now C. S., sec. 3106, was as follows:

"The term 'operating property' as used in this act, shall include all franchises, rights of way, roadbeds, tracks, terminals, rolling-stock, equipment, power stations, power sites, lands, reservoirs, generating plants and substations, all immovable or movable property owned, used or occupied by, or operated in connection with any railroad, or telegraph, telephone or electric current transmission line, wholly or

partly within this state, and all station grounds and all superstructures upon the rights of way and station grounds, all other immovable or movable property used, operated or occupied by any person owning, operating or constructing any line of railroad or telegraph, telephone or electric current transmission lines, wholly or partly within this state, and reasonably necessary to the maintenance and operation of such road or line, or in conducting its business, and shall include all title and interest in such property, as owner, lessee or otherwise.''

The law provided that operating property of all railroads, telegraph, telephone, and electric current transmission lines should be assessed by the state board of equalization, and that all property of any such company not included within the term ''operating property'' should be assessed by the county assessor.

The court found that a portion of the property so assessed by the assessor was included in the assessment made by the state board as operating property, and that each and all things with relation to such assessment were without authority and void.

Respondent urges in support of the judgment that the property assessed by the county assessor was terminal property, and therefore included within the definition of ''operating property''; that if the property was in fact a railroad terminal, it was operating property, whether actually used at the time in the operation of the railroad or not.

In the case of *Jacksonville, L. & St. L. R. Co. v. Louisville & N. R. Co.*, 150 Ill. 480, 37 N. E. 924, in construing the provisions of a contract, the court said:

''Terminal facilities, as understood by those operating railroads, do not include tracks, other than those used in making up trains, and the track put in upon the property of said carworks company was not used for that purpose, did not belong to appellee, and was not a part of its terminal facilities. . . . . ''

In the case of *Minneapolis, St. P. & Sault Ste. Marie R. Co. v. Douglas County et al.*, 159 Wis. 408, Ann. Cas. 1916E, 1199, 150 N. W. 422, it is said:

"Terminal facilities, such as freight-houses, grain-elevators, and warehouses, owned by the carrier, equipped with the proper appliances necessary to enable the railroad to perform its full duty of transportation and delivery of freight of all kinds, either to the consumer, the dealer, or a connecting carrier, constitute property necessarily used in the operation of a railroad, and hence become part of the entirety. The word 'necessary' here does not mean 'inevitable' on the one hand, nor merely 'convenient' or 'profitable' on the other, but a stage of utility or materiality to the carrier's business less than the first but greater than the latter of these expressions. Perhaps the phrase 'reasonably required in the exercise of sound business prudence' would express the idea fairly well."

The language quoted above was used in construing a section of a statute of the state of Wisconsin providing for the taxation of railroad property, and the definition of the term "property of the railroad company," contained in said section, is quite similar to the definition of "operating property" contained in the statute under consideration in this case.

The word "terminal," as used in the definition of operating property within our statute, means property used at the time of the assessment for the purpose of furnishing terminal facilities in the operation of the railroad. If property is acquired or owned by a railroad with a *bona fide* present intention of using it to furnish terminal facilities in the immediate future, it would be "property owned, used or occupied by or operated in connection with any railroad, . . . ." But this does not appear to have been the fact in this case. The railroad tracks had been constructed for several years, and it did not appear that there was any intention to use the property in the immediate future for the purpose of supplying terminal facilities.

The evidence showed that a portion of the property assessed was not a terminal, or owned or operated in connection with the railroad. The county assessor, however, had no power to assess any portion of the operating property of

the road. (*Louisiana etc. R. Co. v. Bailey,* 115 La. 929, 40 So. 358; *Chicago etc. R. Co. v. People,* 218 Ill. 463, 75 N. E. 1021; *Chicago etc. R. Co. v. Cass County,* 8 N. D. 18, 76 N. W. 239; *Nashville etc. R. Co. v. Board of Equalization,* 122 Tenn. 1, 122 S. W. 467; *Illinois Cent. R. Co. v. Cavins,* 238 Ill. 380, 87 N. E. 371.)

The assessment by the county assessor of that portion of the tract of land used as operating property was void. Since the void assessment constituted an inseparable portion of the entire assessment, the assessment was void. (*Cahoon v. Seger,* 31 Ida. 101, 168 Pac. 441.)

Appellant cites the case of *Northern Pac. R. Co. v. Kootenai County,* 19 Ida. 75, 112 Pac. 320, and insists that respondent is not entitled to relief prayed for without offering to pay the amount of taxes justly due for the portion of the property which the county assessor had jurisdiction to assess.

In the case cited there was an assessment of the property which was irregular. There must be an assessment before an obligation arises to pay taxes. In this case the assessment was not irregular, but was void. There was no basis for a determination of the amount which respondent should pay as taxes upon the property which the county assessor had jurisdiction to include in his assessment.

The judgment is affirmed. Costs awarded to respondent.

Morgan, C. J., and Budge, J., concur.