## OREGON SHORT LINE R. CO. v. ADA COUNTY et al.

### No. 1950.

District Court, D. Idaho, S. D.
April 2, 1937.

H. B. Thompson, of Pocatello, Idaho, for plaintiff.

Willis C. Moffatt and Maurice H. Greene, both of Boise, Idaho, for defendants.

CAVANAH, District Judge.

The controversy is one as to whether the property involved shall be assessed for taxation purposes exclusively by the State Board of Equalization or by the county assessor and is governed by sections 61-601 and 61-113 of the Idaho Code.

The ultimate purpose of the suit is to secure a decree restraining the defendants from enforcing the assessment as to the assessed valuation of plaintiff's property made by the county assessor for the years 1935 and 1936. The statute was evidently drawn with care. Its language is plain and unambiguous and the broad purpose of it is to define the term "operating property" of the railroad and who shall have exclusive authority to assess it for taxation purposes. It prescribes in detail the character of the property that is "operating property" and it is there stated that all franchises, rights of way, roadbeds, tracks, terminals, rolling stock, equipment, power stations, power sites, lands, reservoirs, generating plants and substations, owned or used or occupied by or operated in connection with any railroad which are reasonably necessary to the maintenance and operation of such road or in conducting its business are included in the term of "operating property" and shall be assessed exclusively by the State Board of Equalization. Obviously the statute places the exclusive authority with the State Board of Equalization to assess rights of way, roadbeds, tracks, terminals, and lands, which are reasonably necessary to the maintenance and operation of the road and in the conduct of its business. With this construction of the statute our present concern is with the application of the facts to determine whether they come within the scope of the statute. The material facts are that the plaintiff Oregon Short Line Railroad Company was until 1925 engaged in operating a branch line of railroad with terminal thereof at Boise, Idaho, and thereafter into and through the city, with station grounds and terminal at places. The defendant Leonardson is the assessor of Ada county in which the city is located. Prior to March, 1913, the Oregon Short Line Railroad Company had been the owner of parcel No. 1, which it acquired in 1887 as its original right of way, and thereafter acquired, in September, 1923, the property referred to as parcel No. 2, known as the citizens' right of way, and both of which properties are involved here. At the time of their acquisition it was the intention of the Railroad Company to use them for terminal facilities and station grounds in the city in the operation and conducting of its business. The property included in parcel No. 2 was, prior to the time the Railroad Company acquired it, conveyed to trustees in trust for the purpose of development of railroad facilities. After the Railroad Company had acquired it the county undertook to assess it, but thereafter canceled the assessment after receiving, in May, 1925, an opinion of the Attorney General of the state advising that the property was not subject to local assessment and thereafter it and parcel 1 were certified and returned by the Railroad Company to the State Board of Equalization and assessed by it as operating property up to and including the year 1935 and the taxes paid thereon by the company. The county assessor has certified for the year 1935, to the county commissioners, the tax roll which includes certain portions of parcel one and all of parcel No. 2 and was undertaking to do so for the year 1936 at the time the present suit was instituted.

The tax notices sent to the Railroad Company by the county assessor discloses that for the year 1935 the property assessed to be the citizen's right of way between the east city limits and Sixteenth street, and the leased portion of the Oregon Short Line Railroad Company right of way between Fifth and Sixth street, Sixth and Seventh street, Eighth and Ninth street, and Thirteenth and Fourteenth street in the city, as shown by the blueprints in the county assessor's office and for the year

1936 the description of the property was the same as for the year 1935. These are the parcels of property referred to as parcels 1 and 2 and should be considered separately, as there appears to be some difference as to their situation. The primary question here relates to the proper classification for the purpose of taxation of this land of the Railroad Company, and the controversy seems to be confined to the contention of the defendants that the four parcels on the original right of way on which there is no railroad trackage and the tax numbers in the 1936 assessment of the citizens' right of way not occupied or used by the Railroad Company are subject to taxation by the defendants, except where it appears that there is railroad trackage thereon and used by the Railroad Company in the conduct of its business.

The evidence discloses that the four tracts of the original right of way of the company are fronting on Front street and have been for many years, leased by the company. The buildings were constructed thereon by the lessees or tenants and the nature of their business consists of retail coal and seed, produce and flour dealers, and wholesale grocers. No railroad tracks are situated on them, although spur tracks of the company lie immediately south of the buildings so that cars spotted on the tracks may be directly loaded or unloaded into the buildings. These concerns receive from and deliver to the Railroad Company a considerable quantity of freight. There appears tracks of the company and used by it, on the rest of the old right of way. In 1913 when the statute we are now considering was adopted defining operating property of railroads and declaring that such property should be assessed by the State Board of Equalization the company owned station grounds and terminals at Boise, which included the ground lying between the yards and Front street along which the unloading track ran and served the premises and warehouses upon which the Boise Grocery Company, J. C. Sinsel, Compton Transfer & Storage Company and a hardware company operated by Mr. Lewis are situated and who receive a large number of cars of merchandise transported over the lines of the company.

As to the citizens' right of way, it was deeded to the Railroad Company in part consideration of its constructing a line of railroad between 30 and 40 miles in length from the junction with the line of railroad running into Boise by way of the Bench and present passenger depot and Orchard. Since 1925 when the company acquired it a portion of it has been occupied by business establishments under leases from the company. When it extended its main line to Boise in 1923 the citizens' right of way was then and in 1924 locally assessed, but in 1925 the company included it in its report to the State Board of Equalization who has assessed it every year since and the company has paid the taxes thereon.

There is a track of the company over which it runs freight cars on the citizens' right of way at the east side of Sixteenth street and running east along the north side of the buildings and fence with the south rail about six feet north of the buildings to Ninth street where it crosses at an angle, in the city.

We come now to a consideration of the real question in the case as to whether the property should be assessed by the State Board of Equalization or by the county assessor under sections 61-601 and 61-113 of the Idaho Code, which provides:

Section 61-601. "The operating property of all railroads, telegraph, telephone and electric current transmission lines, and the franchises of all persons owning, or operating as lessees, or constructing any telegraph, telephone or electric current transmission line, or railroads, wholly or partly within this state, shall be assessed for taxation for state, county, city, town, village, school district and other purposes, exclusively by the state board of equalization."

Section 61-113. "The term 'operating property' as used in this act shall include all franchises, rights of way, roadbeds, tracks, terminals, rolling stock, equipment, power stations, power sites, lands, reservoirs, generating plants and substations, all immovable or movable property owned, used or occupied by, or operated in connection with any railroad, or telegraph, telephone or electric current transmission line, wholly or partly within this state, and all station grounds and all superstructures upon the rights of way and station grounds, all other immovable or movable property used, operated or occupied by any person owning, operating or constructing any line or railroad, or telegraph, telephone or electric current transmission lines, wholly or partly within this state, and reasonably necessary to

the maintenance and operation of such road or line, or in conducting its business, and shall include all title and interest in such property, as owner, lessee or otherwise."

It is obvious that by section 61-601 supra, all "operating property" of the railroad shall be assessed for taxation for county, city, and state purposes exclusively by the State Board of Equalization and not locally by the county assessor or commissioners, and with that requirement in mind we must necessarily determine what constitutes "operating property" of a railroad, as defined by section 61-113 supra. The term includes all "franchises, rights of way, roadbeds, tracks, terminals * * * land * * * immovable or movable property owned, used or occupied by, or operated in connection with any railroad * * * and all station grounds and all superstructures upon the rights of way, * * * and reasonably necessary to the maintenance and operation of such road or line, or in conducting its business." The expression in the statute that "all immovable or movable property owned, used or occupied by * * * any person owning, operating or constructing any line or railroad * * * and reasonably necessary to the maintenance and operation of such road or line, or in conducting its business," gives a broad field within which to consider as to the manner in which the property is used.

The laws of the state authorize a railroad company to acquire and own ground at its terminals for warehouses to be constructed thereon to facilitate the receipt and delivery of freight (sections 29-104, 29-114 and 29-508, Idaho Code); and the company may permit others to erect buildings on its right of way with the view of securing freight therefrom and for its continuance to facilitate shipment over its road even though they may be also for the convenience of others. Such erections would not be inconsistent with the purpose for which its charter was granted, and it may grant to others the right to do the same thing for the same object in increasing of its facilities for the delivery and receipt of freight. This thought also arose in the case of Grand Trunk Railroad Company v. Richardson et al., 91 U.S. 454, 468, 23 L.Ed. 356, where the court considered the right of a railroad to permit the erection of buildings within the line of its roadway by others for convenience in delivering and receiving freight. In this

respect the position of the Railroad Company here is in harmony with the views there expressed, for the court said: "If the buildings of the plaintiffs were rightfully where they were, if there was no trespass upon the roadway of the company, it was clearly a pertinent fact to be shown; and while it must be admitted that a railroad company has the exclusive control of all the land within the lines of its roadway, and is not at liberty to alienate any part of it so as to interfere with the full exercise of the franchises granted, we are not prepared to assert that it may not license the erection of buildings for its convenience, even though they may be also for the convenience of others. It is not doubted that the defendant might have erected similar structures on the ground on which the plaintiffs' buildings were placed, if in its judgment the structures were convenient for the receipt and delivery of freight on its road. Such erections would not have been inconsistent with the purposes for which its charter was granted. And, if the company might have put up the buildings, why might it not license others to do the same thing for the same object; namely, the increase of its facilities for the receipt and delivery of freight? The public is not injured, and it has no right to complain, so long as a free and safe passage is left for the carriage of freight and passengers." Covington Stock-yard Co. v. Keith, 139 U.S. 128, 11 S.Ct. 461, 35 L.Ed. 73; Michigan Central R. R. Co. v. Bullard, 120 Mich. 416, 79 N.W. 635; Danville & W. Ry. Co. v. Lybrook, 111 Va. 623, 69 S.E. 1066, Ann.Cas.1912A, 175.

The Supreme Court of Vermont in the case of City of Montpelier v. Central Vermont Railroad Co., 89 Vt. 36, 93 A. 1047, 1049, where it can be said that the facts are similar to those here, said: "Three-eighths of an acre of a railroad company was taxed by a city as one parcel. The company's storage facilities were insufficient, and for many years it had leased a part of the parcel at a merely nominal rent. The lessee was a large dealer in grain, flour, and feed, and he used the premises to store produce coming to him and going out over the railroad. The premises were adapted for use in connection with the railroad, and enabled the railroad company to make prompt and convenient delivery of goods to the lessee, and facilitated the delivery of goods from him to the railroad company. The congested traffic in the railroad

yards was relieved by this arrangement. Held, that the leased land was used for railroad purposes, and liable only to state taxation; and, where the whole parcel was assessed as one parcel for local taxation, the whole tax thereon was invalid."

In the case of Anderson v. InterState Mfg. Co., 152 Iowa, 455, 132 N.W. 812, 813, 36 L.R.A.(N.S.) 512, the Supreme Court of Iowa where the Railway Company owned the right of way on which the building in controversy was situated leased a portion thereof to another for the erection of the building in which was stored furnaces. The contention was made that the use was for private purposes only and could not be maintained under the easement acquired by the Railway Company. The location of the building made the loading of freight easy and saved the expense of hauling for the purposes of loading. The question was disposed of by the court in saying: "That the railway company might have built and used a warehouse for such purpose on its grounds under its easement cannot be seriously questioned, and, if that be true, we see no reason why the defendant may not legally build and use a warehouse for the same purpose. The principal use to which the building was put was to facilitate shipments over the road owning the easement, and the mere fact that the defendant stored there some furnaces which were shipped over other roads does not in our judgment constitute a misuse of the easement."

■ It cannot be disputed that under the evidence, the buildings erected on the company's right of way are used by the lessees or tenants in storing fruit, grain, and other products for the purpose of shipment and the receiving and delivering of freight from the line of the company which seem necessary and proper in the operation of the road. Fairly it can be said that the operation of a railroad includes the necessary facilities for handling products and freight presented for shipment and the buildings in question which are used in storing products and freight delivered by the Railroad Company and in shipping such therefrom over its line are essential for that purpose. As a common carrier the obligation is imposed upon the Railroad Company to furnish all necessary structures in which to receive and deliver freight for shipment over its lines and into which to handle freight from its cars on delivery to the consignee. The arrangement here made by the Railroad Company with the lessees or tenants to erect buildings upon its right of way enables it to more promptly discharge its duty as to the delivery and receiving of freight and furnishing of reasonable terminal facilities and such an arrangement is not inconsistent with the purpose for which its charter was granted. The right of way in question, although the structures of others appear thereon, was acquired by the company with a bona fide intention of using it to furnish terminal facilities and with more convenience in delivering and receiving freight which can be said as being property reasonably necessary to the operation of the road and in conducting its business. Chicago, M. & St. P. R. Co. v. Kootenai County, 33 Idaho, 234, 192 P. 562.

■ As stated, there is a track of the company over which it runs freight cars on the citizens' right of way at the east side of Sixteenth street and running east along the north side of the buildings and fence with the south rail about six feet north of the building to Ninth street, and that being the case it is evident that the Railroad Company has upon its right of way its own tracks and is using the same in the operation of its railroad business which would conclusively establish that that portion of the right of way comes under the statute as being used in the operation of the road and in conducting its business. It would seem impossible for the county to segregate and eliminate that portion of the right of way from the assessment and determine the amount to be deducted under the general and indefinite description of the right of way made by the county assessor, and should it appear that the "county assessor inseparably comingles property which he has jurisdiction to assess with property which he has no jurisdiction to assess in his description thereof on the assessment roll, the entire assessment is void." Chicago, M. & St. P. R. Co. v. Kootenai County, supra.

The conclusion therefore seems inevitable that under the state statute and the evidence the method pursued by the company to assist the shipper in the receipt and delivery of carload lots of freight by making leases with them of sites immediately joining the trackage constructed for that purpose at the Boise terminal is "reasonably necessary to the maintenance and operation of such road or line, or in conducting its business," and the assessing of such right of way for taxation purposes by the State Board of Equalization would seem to be absolute.

Importance must be attached to the fact that the manner in which the right of way was assessed by the county assessor is illegal, as it appears that the description made by the assessor as "leased portion of O S L R R Ry in Boise between 5th and 6th street, 6th and 7th street, 8th and 9th street and 13th and 14th street, as shown by blue prints in the County Assessor's office" and "Citizens right of way between east City limits and 16th street, in Boise, as shown by blue prints in County Assessor's office" is indefinite as it cannot be ascertained therefrom what portion of the right of way between the streets are "leased portion" for there was no blueprint in the county assessor's office in 1935, from which a definite description could be ascertained. No accurate and complete list of the tax numbers were entered upon the assessment roll for the year showing opposite each number a correct description of each tract of land designated by such number and no certified duplicate of each list of tax numbers was filed with the tax collector as true and correct as required by the state law. The assessor did not separately assess upon the rolls the right of way according to numbers but lumped it all, which was not a compliance with the provisions of sections 61-301, 61-302, 61-303 and 61-307 of the Idaho Code, but attention is called to section 61-1024 of the Idaho Code allowing the owner of real property to redeem a particular part or portion of the property included in a single delinquency entry by paying the amount of taxes due on that part of the whole. The difficulty in applying that statute to the description here made by the assessor is in determining what particular part or portion of the property should be segregated and eliminated from the whole as the description so made is so indefinite and general that it cannot be determined what should be eliminated from taxation. It is evident from the evidence that the statute of the state was not complied with in order to bring the assessment under the case of Chicago, M. & St. P. R. Co. **v.** Kootenai County, supra.

I find no basis for the conclusion that the assessment made by the county assessor was authorized by the laws of the state or made in compliance therewith, and for the reasons thus stated the same is canceled and the prayer of the complaint is granted with plaintiff's costs.