## ADA COUNTY et al. v. OREGON SHORT LINE R. CO.
### No. 8671.

Circuit Court of Appeals, Ninth Circuit.
June 20, 1938.

Willis C. Moffatt and Maurice H. Greene, both of Boise, Idaho, for appellants.

George H. Smith, of Salt Lake City, Utah, and H. B. Thompson and L. H. Anderson, both of Pocatello, Idaho, for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a decree filed April 14, 1937, in the court below, perpetually enjoining the appellants from collecting or attempting to enforce the payment of any portion of certain taxes assessed and levied against two parcels of real estate

situate in Ada County, Idaho, title to which was in the appellee corporation.

The appellee brought suit against the appellants praying that certain local tax assessments be declared void and that appellants be enjoined from taking any steps to collect said taxes. The property affected concerns two parcels, designated by the parties as the "Original right of way" or "Parcel No. 1," and the "Citizens' right of way" or "Parcel No. 2." The appellee acquired the former parcel about the year 1887 and the latter in 1923.

The appellee alleged the official positions of appellants Leonardson and Ketchen; the acquisition and description of the two parcels of land referred to above; that the premises were acquired "with the bona fide present intention, at the time of acquisition, of using the same to furnish terminal facilities and station grounds at said City of Boise," etc, and using the same as operating property; "and that all of said property was reasonably necessary to the operation and maintenance of said station grounds and terminal and line of railroad, and in the conduct of its business at Boise, Idaho, * * *." It was further alleged that on March 13, 1913, the legislature of the State of Idaho enacted a law providing for assessment of property and equalization of assessments, describing powers and duties of taxing officers; that said Act defined the term "operating property." (Chap. 58, Session Laws of Idaho, 1913 (H.B. No. 156.)

The complaint went on to allege that the real property of the appellee had been assessed by the State Board of Equalization continuously from March 13, 1913, down to May, 1935; that following the acquisition of Parcel No. 2 or Citizens' right of way

in 1923, the appellant Leonardson undertook to place an assessment thereon, but the Attorney General of the state rendered an opinion under date of May 21, 1925, wherein he held said property assessable only by the State Board of Equalization and not locally; that thereupon the assessment of the county assessor was cancelled and thereafter through the intervening years the property was assessed by the State Board of Equalization; that appellant Leonardson certified and delivered to appellee a purported assessment of said property for the year 1935, the assessment describing the portions of Parcel No. 1 or Original right of way, levied upon as follows: "Leased portion of O.S.L.R.R. R.W. in Boise, between 5th & 6th Streets, 6th & 7th Streets, 8th & 9th Streets and 13th & 14th Streets as shown by blue prints in County Assessor's office." and Parcel No. 2 or Citizens' right of way,' as follows: "Citizens' Right of Way between east city limits and 16th Street, in Boise, as shown by blue prints in County Assessor's office."; that the assessed valuation of Parcel No. 1 was $8910 and the tax $498.97, and the assessed valuation of Parcel No. 2, $157,079 and the tax $8,796.42; that Leonardson was proceeding to assess said property; that such assessment would create an apparent lien or cloud of title upon the land; that the descriptions were indefinite, obscure and not sufficiently particular; that Leonardson purported to assess the property for 1936, as he had for 1935; that it could not be determined what portion of the assessment was attempted to be levied against any particular portion or parcel of all of the said property attempted to be assessed.

The pertinent statutes are set forth in the margin.[1]

---

[1] Section 61-113, I.C.A. (Sec. 11, Act of Mar. 13, 1913, Ch. 58):

"The term 'operating property' as used in this act shall include all franchises, rights of way, roadbeds, tracks, terminals, rolling stock, equipment, power stations, power sites, lands, reservoirs, generating plants and substations, all immovable or movable property owned, used or occupied by, or operated in connection with any railroad, or telegraph, telephone or electric current transmission line, wholly or partly within this state, and all station grounds and all superstructures upon the rights of way and station grounds, all other immovable or movable property used, operated or occupied by any person [includes corporations—§ 61-115, I.C.

A.] owning, operating or constructing any line or railroad, or telegraph, telephone or electric current transmission lines, wholly or partly within this state, and reasonably necessary to the maintenance and operation of such road or line, or in conducting its business, and shall include all title and interest in such property, as owner, lessee or otherwise."

Section 61-601, I.C.A. (Section 86 of the Act, supra):

"The operating property of all railroads, * * * and the franchises of all persons owning, or operating as lessees, or constructing any * * * railroads, wholly or partly within this state, shall be assessed for taxation for state, county, city, town, village, school district and

The appellee introduced oral and documentary evidence at the trial, and the appellants elected to submit the cause on that evidence.

The Original right of way is a strip or parcel of land parallel to the tracks of the appellee to the north thereof, and the Citizens' right of way is a similar strip of land parallel to the tracks to the south thereof, both parcels being adjacent to said line of tracks and extending generally east and west, being intersected by streets running generally at right angles thereto.

The railroad company acquired the Original right of way at the time of the original establishment of a branch line into Boise, probably as early as 1887. Prior to 1923 the Citizens' right of way was held by trustees in trust to be conveyed for railroad purposes when in the judgment of the trustees such action would result in sufficient benefit to the City of Boise. On September 19, 1923, said trustees made such conveyance to the appellee herein for the stated consideration of one dollar and the bringing of its main line into Boise. In that year the railroad brought its main line through Boise. It was found as a fact by the court that appellee Leonardson undertook in the year 1925 to assess locally the Citizens' right of way and thereafter in the same year said assessment was cancelled and continuously thereafter, to and including the years 1935 and 1936, all of the lands here involved were certified as operating property of appellee and assessed as such by the State Board of Equalization and were not assessed or attempted to be assessed locally or otherwise by the County Assessor of Ada County until 1935.

Four parcels of land included in the Original right of way were under lease to tenants of the railroad and the assessment for the year 1935 was levied against these parcels of said right of way.

Substantially all of the ground in the Citizens' right of way was occupied by lessees of the trustees before 1923. There were 18 leases upon this ground at the time of the trial, 17 of which were made prior to 1923. The lessees conduct a variety of businesses upon the leased portions of both rights of way and in connection therewith ship and receive large quantities of freight over the lines of appellee.

The leases are all substantially the same, with the exception of the description and rental and cover only the land, buildings being erected by the tenants. There was a provision in each lease that the lessee should pay local taxes on buildings and improvements.

The appellants assert in their brief: "As shown by the map (Ex. 1) there are certain portions of this [Citizens'] right of way which are not occupied by tenants nor by the appellee. These are designated by tax numbers 2, 4, 5, and 6. These parcels have never been used by the railroad and were, at the time of the acquisition by the railroad, vacant and are not now used by the railroad or by anyone else."

These parcels or plats were not separately assessed in 1935, but were given tax numbers in 1936. Tax numbers were not given any of the property of the two rights of way in 1935; a list was made up of the property for 1936, including the four listed above, with descriptions and numbers, but the list was not certified. See Sections 61-301 et seq., I.C.A.

The appellants contend that the lower court made no distinction between the premises designated as Tax Nos. 2, 4, 5, and 6, which were vacant and not used, and leased premises; that if the appellee had the intention of using the same for terminal facilities it had not evidenced such intention and there is no evidence that it so intended to use this property at any time in the future as such.

We have diligently searched the record and find not one word of testimony to the

other purposes, exclusively by the state board of equalization."

Section 61-603, I.C.A. (Section 88 of the Act, supra):

"All property belonging to any person owning, operating or constructing any railroad, telegraph, telephone or electric current transmission lines, wholly or partly within this state, not included within the meaning of the term 'operating property,' as defined in this act; namely, property not reasonably necessary for the maintenance and successful operation of such railroad, telegraph, telephone or electric current transmission line, including vacant lots and tracts of land, and lots and tracts of land with the buildings thereon not used in the operation of such railroad, telegraph, telephone or electric current transmission line, also tenement and resident property, except section houses, also hotels and eating houses, situate more than 100 feet from the main tract of any such railroad, shall be assessed by the assessor of the county wherein the same is situated."

effect that the premises designated as Tax Nos. 2, 4, 5, and 6 are vacant and unoccupied and counsel have not pointed out any place in the record where such testimony may be found. True, reference is made to Exhibit No. 1, but we have encountered great difficulty in so interpreting said exhibit.

◼ Whatever the fact may be it is not now material here because the evidence discloses and the court found that the premises described was "operating property." Many years prior to the conveyance to appellee this property, known as "Citizens' right of way," had been purchased and conveyed to trustees for the purpose of encouraging a development of railroad facilities at that place and to be held for railroad purposes. In fulfillment of the trust the trustees conveyed this tract to the appellee for railroad purposes and as an inducement to have it bring its main line into Boise, Idaho, which it did;, that theretofore the right of way of appellee at this point was but 50 feet wide, the acquisition of this property enabled the road to widen its right of way to the ordinary width of 100 feet. The court also found that this property was acquired by appellant with a bona fide present intention of using it to furnish terminal facilities in the immediate future.

The primary question to be decided is whether the property of the appellee which appellant Leonardson undertook to assess falls within the definition of "operating property" as set forth in Sections 61-113 and 61-601 of the Idaho Code Annotated. If the property in question is "operating property" it is assessable exclusively by the State Board of Equalization; if not, by the county assessor. Sections 61-601, 61-603, I.C.A.

◼ The appellants discuss "exemptions" from taxation in their brief, arguing that the appellee was required to show clearly that its property fell within the "exemption" of "operating property" in order to avoid taxation by the local authorities and that this it failed to do. The question of "exemption" is not involved here. Under the law, no property of a public utility is exempt or escapes taxation, but the "operating property" for assessment and taxation purposes in the State of Idaho is under the jurisdiction of the State Board of Equalization and not of the local taxing authorities.

◼ On the other hand, the appellee discusses "charter powers" at length in its brief. No question of power concerns this court. The power of a corporation to lease its land is not disputed. We will not be led into a discussion of minor and immaterial issues. The question here is a simple one—is or is not the property assessed "operating property?" Under the statute the property was taxable either by the State Board of Equalization or the local authorities, according to its classification, but not by both.

◼ The statutes of the different states vary somewhat in wording and perhaps greatly in meaning and effect; in any event we are governed not by the decisions of other states but only by those of the Idaho courts.

◼ In determining the issue before us two sections of the Idaho code must be read together, namely, Section 61-113, which defines operating property, and Section 61-603, which makes non-operating property assessable by the county assessor. The term "operating property" includes all "rights of way, * * * terminals, * * lands, * * * all immovable or movable property owned, used or occupied by, or operated in connection with any railroad, * * * and reasonably necessary to the maintenance and operation of such road or line, or in conducting its business * *." Property assessable by the county assessor is "All property * * * not included within the meaning of the term 'operating property,' * * *; namely, property not reasonably necessary for the maintenance and successful operation of such railroad, * * * including vacant lots and tracts of land, and lots and tracts of land with the buildings thereon not used in the operation of such railroad * * *."

The lessees of the property assessed or attempted to be assessed were, generally speaking, active customers of the appellee road and their business required that they be served by trackage. To such business, the expense of constructing a siding might be prohibitive. If they were not on the track they would have to receive their merchandise at the freight depot or sheds and transport it by truck to the place of business. There was testimony that the lessees would not have been permitted to occupy the property had they not been active customers of the road. Their location on the tracks of the appellee undoubtedly is an

important factor in securing their business, a very persuasive inducement to the lessees to ship over the lines of appellee road. If the appellee, by furnishing locations on its right of way, can insure itself the traffic of all these firms that property thus occupied would be considered as reasonably necessary to the operation of the railroad. Were these lessees to locate elsewhere it is conceivable that the railroad would lose their business altogether.

Another circumstance appearing in the record also supports the theory that the property was operating property. There was testimony that the freight depot of appellee would be inadequate to handle the business, if all that which passed through the hands of the lessees was compelled to be received or delivered through the regular freight station. If appellee had constructed sheds and freight houses adequate to properly handle the total volume of its business, there would be no question that these structures would be "operating property." Exactly the same result is accomplished through the medium of leases to individual shippers who construct their own buildings for the receipt and delivery of commodities.

From the evidence the court found that all of the premises here involved were acquired by the appellee, " * * * with the bona fide present intention, at the time of such acquisition, of using the same to furnish terminal facilities and station grounds at said City of Boise, including the making of arrangements by lease or otherwise for the construction and maintenance thereon of warehouses, coal yards and other mercantile establishments to be used by shippers in connection with the receipt from and delivery to said railroad company of freight shipped into and out of Boise by such shippers over the line of railroad of the complainant, thereby reducing the volume of business in complainant's freight house, and the labor incidental thereto, and affording more direct and speedy delivery to and from shippers, and to be otherwise used as operating property, as that term is defined in Section 11 of Chapter 58, Session Laws of Idaho, 1913, now Section 61-113, Idaho Code Annotated, and that all of said property was reasonably necessary to the operation and maintenance of said station grounds and terminal and line of railroad, and in the conduct of its business at Boise, Idaho, and has at all of said times been used for the purposes aforesaid; * * *."

The conclusions of law correctly interpret the Idaho law and the decree is sustained by the decisions.

In Grand Trunk Railroad Co. v. Richardson, 91 U.S. 454, 23 L.Ed. 356, cited in the opinion of the court below, the railroad company had leased a portion of land adjoining its tracks to the defendants in error at a nominal rental. Several years later a spark from an engine ignited a wooden bridge; the fire spread to and consumed the buildings, etc., erected by the defendants in error, who brought suit against the railroad and recovered judgment, from which the railroad appealed. On appeal the railroad contended that it had no authority to license another to use its roadway or property and the license to plaintiffs was void and, therefore, plaintiffs being trespassers, the railroad was liable only upon proof of gross negligence. The court said (pages 468, 469): "If the buildings of the plaintiffs were rightfully where they were, if there was no trespass upon the roadway of the company, it was clearly a pertinent fact to be shown; and while it must be admitted that a railroad company has the exclusive control of all the land within the lines of its roadway, and is not at liberty to alienate any part of it so as to interfere with the full exercise of the franchises granted, we are not prepared to assert that it may not license the erection of buildings for its convenience, even though they may be also for the convenience of others. It is not doubted that the defendant might have erected similar structures on the ground on which the plaintiffs' buildings were placed, if in its judgment the structures were convenient for the receipt and delivery of freight on its road. Such erections would not have been inconsistent with the purposes for which its charter was granted. And if the company might have put up the buildings, why might it not license others to do the same thing for the same object; namely, the increase of its facilities for the receipt and delivery of freight? The public is not injured, and it has no right to complain, so long as a free and safe passage is left for the carriage of freight and passengers."

The first duty of a railroad is to serve the public and if the public may be more conveniently served by leasing parcels of its property to individual shippers, then the property so leased and used is "reasonably necessary for the maintenance and successful operation of" the road. Cf. Covington

Stock-yard Co. v. Keith, 139 U.S. 128, 133, 11 S.Ct. 461, 35 L.Ed. 73.

The Supreme Court of Wisconsin, in Minneapolis, St. P. & S. S. M. Ry. Co., v. Douglas County et al., 159 Wis. 408, 150 N.W. 422, 423, Ann.Cas.1916E, 1199, defined the word "necessary" as follows: "The word 'necessary' here does not mean 'inevitable' on the one hand, nor merely 'convenient' or 'profitable' on the other, but a stage of utility. or materiality to the carrier's business less than the first but greater than the latter of these expressions. Perhaps the phrase 'reasonably required in the exercise of sound business prudence' would express the idea fairly well."

The Idaho statute uses the phrase "reasonably necessary," which is possibly more flexible than simply "necessary."

The leading case in Idaho on the subject of taxation of operating property, Chicago, M. & St. P. Ry. Co. v. Kootenai County et al., 33 Idaho 234, 192 P. 562, 564, after quoting the above definition with approval, goes on to say: "The word 'terminal,' as used in the definition of operating property within our statute, means property used at the time of the assessment for the purpose of furnishing terminal facilities in the operation of the railroad. If property is acquired or owned by a railroad with a bona fide present intention of using it to furnish terminal facilities in the immediate future, it would be 'property owned, used or occupied by or operated in connection with a railroad. * * *' "

While in that case the court held the property to be non-operating property, it voided the assessment on the ground that a portion of the property assessed was operating property and the assessment was inseparable and therefore void.

In accord with the decisions of the Idaho court we hold that the leased portions of parcels No. 1 and No. 2 in the case at bar are an integral part of the terminal facilities of the appellee railroad at Boise.

 This view is further supported by the construction placed upon the statute as applied thereto for over ten years before the trial by the officers and agencies of the State of Idaho. As previously outlined, the appellee acquired parcel No. 2 in 1923; the assessor Leonardson attempted to place an assessment thereon but was dissuaded by

an opinion of the Attorney General of the State; the appellee added the parcel to its descriptions on file with the State Board of Equalization; and the property has been assessed by that body, and not the local assessor, since that time. Thus we have an acceptance of the property for taxing purposes by the State Board of Equalization and acquiescence by the county assessor, the two agencies charged with the enforcement of the law, for an extended period of time. While no court will be bound by any mistaken construction of an agency, the rule is that an interpretation of a statute by an agency charged with the enforcement thereof is entitled to consideration and weight. United States v. Shreveport Grain & El. Co., 287 U.S. 77, 84, 53 S.Ct. 42, 44, 77 L. Ed. 175; 25 R.C.L., p. 1043, § 274. With no change in the use of the property and no statutory amendment, we find the appellant Leonardson, after acquiescing for ten years in the assessment of said property by the State Board of Equalization as operating property assuming to levy an assessment against it as non-operative property. Nor is it to be overlooked that the determination of what is "operating property" rests with the State Board of Equalization.

 We hold, therefore, the injunction was properly granted for two reasons, (1) the property is "operating property" within Section 61-113, I.C.A., by virtue of its use as such; and (2) the assessment was void under Chicago, M. & St. P. Ry. Co. v. Kootenai County et al., supra, and Sections 61-301, 61-302, 61-303 and 61-307, on the ground of indefiniteness, in that the assessor did not separately assess upon the rolls the right of way according to numbers, none being entered upon the assessment roll showing thereon an accurate description of the land designated by such number. This second ground applies only to the assessment for 1935. Upon the oral argument counsel for appellant conceded this latter point, focusing the attack solely upon the permanency or perpetual feature of the injunction. But this does not call for any modification of the decree at this time as the injunction can remain in force only so long as the facts and the statute remain unchanged, and this is clearly pointed out in the conclusions of law upon which the decree rests.

Affirmed.